553 S.E.2d 849 (2001)
251 Ga. App. 555
In the Interest of S.H., a child.
No. A01A1391.
Court of Appeals of Georgia.
August 13, 2001.
*850 Debra W. Hale, Lawrenceville, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, *851 Senior Asst. Atty. Gen., Shalen S. Nelson, Laura W. Hyman, Asst. Attys. Gen., John L. Welsh, II, Laurenceville, for appellee.
ELLINGTON, Judge.
Appellant appeals from the Gwinnett County Juvenile Court's denial of his petition to legitimate five-year-old S.H. and from the termination of his parental rights. Appellant contends the evidence was insufficient to support the juvenile court's order and, further, that the court erred in finding his relatives were not suitable placements for the child. We affirm the denial of appellant's legitimation petition, the termination of his parental rights, and the determination that placement with appellant's mother is not in the best interest of S.H. We reverse the juvenile court's determination as to the suitability of placement with appellant's father. We remand for further proceedings consistent with this opinion.
1. Appellant argues that there was insufficient clear and convincing evidence to support the denial of his legitimation petition and the termination of his parental rights. We find no error in the juvenile court's decision. "The standard of review of a juvenile court's decision to terminate parental rights is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Citations and punctuation omitted.) In the Interest of E.C., 225 Ga.App. 12, 13-14, 482 S.E.2d 522 (1997).
The record shows that appellant is the putative father[1] of S.H., who was born in May 1996 when appellant was 16 years old. Appellant lived in Pennsylvania and stayed briefly with the mother of S.H. during her pregnancy. Appellant left before the child was born. Although appellant purchased some baby items and gifts for the child, he failed to pay medical costs and other expenses for S.H. or her mother. Appellant never paid child support and did not legitimate the child. In 1997, the child's mother moved to Georgia and the infant lived with appellant in Pennsylvania for a brief period. The mother returned for the baby in October or November 1997, and appellant has not had contact with S.H. since then.
Shortly thereafter, in January 1998, appellant was tried and convicted of aggravated assault. He was sentenced to 20 years imprisonment, and testified that he will remain incarcerated until at least 2009. Since being imprisoned, appellant has not paid child support, written letters or called S.H., or otherwise developed and maintained a parental relationship with the child in any manner.
In August 1998, the Georgia Department of Family & Children Services ("DFACS") removed S.H. and her three half-siblings from her mother's home based upon allegations that the children were living in a hotel room in unsanitary and unhealthy conditions. The children were placed in the custody of DFACS. After the mother failed to comply with the DFACS plan for reunification, the agency filed a petition to terminate the parental rights of the mother, appellant, and the putative fathers of the three half-siblings on May 9, 2000. Appellant was personally served on June 5, 2000. After a hearing on December 3, 2000, in which appellant testified via conference call, the juvenile court terminated appellant's parental rights.[2] The court found that termination was in S.H.'s best interest based on several factors, including appellant's inability to care for S.H. due to his present and future incarceration, his failure to contact or develop and maintain a relationship with the child, and the child's need for a secure and stable home.
(a) Under OCGA § 15-11-96(h), a petition to terminate parental rights must notify a biological father who is not the legal father that he must file, within 30 days of receipt of notice, a petition to legitimate his child. See also OCGA § 19-7-22. If the father fails to file a legitimation petition within 30 days, "he loses all rights to the child and will not be entitled to object to the termination of his *852 [parental] rights." OCGA § 15-11-96(h); In the Interest of S.L.H., 247 Ga.App. 594, 544 S.E.2d 518 (2001). If no legitimation petition is timely filed, or if it is denied or dismissed, the trial court shall enter an order terminating the father's rights. OCGA § 15-11-96(i).
In this case, the May 2000 termination petition notified appellant that he had 30 days to file a petition to legitimate S.H. or he would lose his right to object to the termination of his rights. See OCGA § 19-7-22. On June 27, 2000, appellant petitioned the juvenile court, asking for appointed counsel and objecting to the termination of his parental rights. The juvenile court appointed counsel to represent appellant on August 24, 2000.[3] Counsel filed appellant's petition to legitimate S.H. three months later, on November 29, 2000, just one week before the December 5, 2000 termination hearing. Accordingly, appellant's failure to timely file a legitimation petition left him without standing to challenge the termination of his parental rights. In the Interest of S.L.H., 247 Ga.App. at 595, 544 S.E.2d 518. There was no error.
(b) Even if the legitimation petition had been timely filed, however, there was sufficient clear and convincing evidence to support both the denial of his legitimation petition and the termination of his parental rights.
Under OCGA § 15-11-94(a) (formerly OCGA § 15-11-81), the considerations for terminating parental rights involve a two-step process. In the Interest of E.C., 225 Ga.App. at 14, 482 S.E.2d 522. The trial court must first determine "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-94(a). Such misconduct or inability may be proved by showing (1) the child is deprived; (2) such deprivation is caused by the lack of proper parental care or control by the parent in question; (3) the deprivation is likely to continue; and (4) the "continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-94(b)(4)(A)(i)-(iv). Further, in determining whether there is a lack of "proper parental care and control," the court may consider several factors, including the "[c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship," as well as "[p]hysical, mental, or emotional neglect of the child." OCGA § 15-11-94(b)(4)(B)(iii), (v). If the child is not in the custody of the parent in question, the lack of proper parental care and control can be demonstrated by showing that the parent, without justifiable cause, failed for a period of one year prior to the filing of the termination petition, to "develop and maintain a parental bond with the child in a meaningful, supportive manner" or to support the child financially. OCGA § 15-11-94(a)(4)(C)(i)-(ii). Once the trial court establishes a lack of parental care and control, the second part of the test for determining whether parental rights should be terminated is whether such termination "is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." OCGA § 15-11-94(a).
In this case, while appellant concedes that S.H. is deprived, he contends that he is not responsible for the deprivation and, moreover, that he could remedy the deprivation. See OCGA § 15-11-94(b)(4)(A) (i)-(iii). However, the evidence presented shows otherwise. Appellant has not had any contact with S.H. since 1997, when the child was an infant. He provided no significant financial support to the child or her mother. He did not attempt to assert or protect his "parental rights" to the child until January 2000. Although there has been some correspondence about his intention to assert his parental rights since that time, this effort has simply been too little too late. Appellant's sudden interest in parenting his five-year-old daughter stands in sharp contrast to his past actions. "The past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue. The decision as to a child's future must rest on more than *853 positive promises which are contrary to negative past fact." (Citations and punctuation omitted.) In the Interest of K.W., 233 Ga. App. 140, 143(2), 503 S.E.2d 394 (1998).
Appellant, however, argues that his incarceration "handicapped" his ability to contact and support his child, preventing him from maintaining even a superficial relationship with the child. That being so, it is unclear how appellant will be able to develop a bona fide parental relationship and provide the necessary parental care for S.H. when, by his own admission, he will be incarcerated until at least 2009. At that time, S.H. will be 13 years old. While incarceration alone does not compel the termination of parental rights, it will support termination when aggravating circumstances are present. In the Interest of R.M., 232 Ga.App. 727, 728, 503 S.E.2d 635 (1998). In this case, the difficulties created by appellant's incarceration for a violent crime, coupled with his failure to support S.H. financially and to maintain contact with her, clearly contributed to her present deprivation and had a "demonstrable negative effect on the quality of the parent-child relationship." OCGA § 15-11-94(b)(4)(A)(ii), (B)(iii). See also In the Interest of C.T., 247 Ga.App. 522, 524(1), 544 S.E.2d 203 (2001). Further, the incarceration will continue to contribute to the child's deprivation in the future. OCGA§ 15-11-94(b)(4)(A)(iii).
We find that the juvenile court did not abuse its discretion in denying appellant's legitimation petition. Further, there was sufficient clear and convincing evidence to support the juvenile court's termination of his parental rights.
2. Appellant complains that the juvenile court erred in finding that there are no relatives with whom the child could be placed. Under OCGA § 15-11-103(a)(1),
[i]f, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family. A thorough search for a suitable family member shall be made by the court and the Department of Human Resources in attempting to effect this placement. A placement effected under this paragraph shall be conditioned upon the family member who is given permanent custody or who is granted an adoption of the child agreeing to abide by the terms and conditions of the order of the court. A placement shall be made under the terms of this paragraph only if such a placement is in the best interest of the child.
(Emphasis supplied.) A trial court's determination that placement with a relative is not in the best interest of the child will not be disturbed by this Court absent an abuse of discretion. See In the Interest of B.R.W., 242 Ga.App. 232, 240-241(3), 530 S.E.2d 5 (2000).
(a) The record shows that Pennsylvania authorities investigated appellant's mother for possible placement of the child. The authorities found the mother would not be a suitable placement because she failed to cooperate with the agency's investigation. Appellant's mother was also behind in her rent, and had other people living in her home who would not cooperate with the investigation. Having reviewed the hearing testimony, we find the juvenile court did not abuse its discretion in determining that placement of S.H. with appellant's mother was not in her best interest.
(b) On the other hand, the juvenile court's determination is premature as to appellant's father, who has expressed an interest in caring for S.H. In the Interest of N.B., 239 Ga.App. 336, 339-340(2), 521 S.E.2d 47 (1999). DFACS suspended its evaluation of appellant's father because appellant had not yet legitimated S.H. There is no proof that appellant is the biological father of S.H. or, by logical extension, that appellant's father is a "blood relative" of S.H.
Even so, pursuant to OCGA § 15-11-103(a)(1), the juvenile court and DFACS are charged with undergoing a thorough search for a suitable family member. See id. Under the circumstances, if it can be established that appellant's father is, in fact, a "blood relative" to S.H., he must be investigated and considered as a possible placement for S.H. In so holding, we do not express any belief *854 that S.H. must or should be placed with appellant's father.
Judgment affirmed in part, reversed in part, and case remanded with direction.
JOHNSON, P.J., and RUFFIN, J., concur.
NOTES
[1] Appellant has never had a blood test to confirm his paternity.
[2] The juvenile court terminated the parental rights of the other parties in a separate proceeding, and they are not a party to this appeal.
[3] Two prior appointed counsel had to withdraw from the case due to conflicts of interest.