558 S.E.2d 56 (2001)
253 Ga. App. 82
In the Interest of L.E.C. et al., children.
No. A01A2091.
Court of Appeals of Georgia.
December 18, 2001.
*57 William M. Hill, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, P. Brian Campbell, Asst. Attys. Gen., for appellee.
ELLINGTON, Judge.
The mother of three minor children appeals from the Fulton County Juvenile Court's decision to terminate her parental rights. Because we find the decision was supported by clear and convincing evidence, we affirm.
In five enumerations, the mother contends there was insufficient evidence for the trial court to find that her parental rights should be terminated pursuant to OCGA § 15-11-94. "The standard of review of a juvenile court's decision to terminate parental rights is whether after reviewing the evidence in the light most favorable to the *58 appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Citation and punctuation omitted.) In the Interest of S.H., 251 Ga.App. 555(1), 553 S.E.2d 849 (2001). "We defer to the trial court's factfinding and affirm unless the appellate standard is not met." (Citation and punctuation omitted.) In the Interest of A.S.O., 243 Ga.App. 1(1), 530 S.E.2d 261 (2000).
Under OCGA § 15-11-94(a) (formerly OCGA § 15-11-81), the considerations for terminating parental rights involve a two-step process. The trial court must first determine "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-94(a). Such misconduct or inability may be proved by showing (1) the child is deprived; (2) such deprivation is caused by the lack of proper parental care or control by the parent in question; (3) the deprivation is likely to continue; and (4) the "continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-94(b)(4)(A)(i)-(iv). Further, in determining whether there is a lack of "proper parental care and control," the court may consider several factors, including the ... [past or present] "(p)hysical, mental, or emotional neglect of the child." OCGA § 15-11-94[(b)(4)(B)(v)]. If the child is not in the custody of the parent in question, the lack of proper parental care and control can be demonstrated by showing that the parent, without justifiable cause, failed for a period of one year prior to the filing of the termination petition to "develop and maintain a parental bond with the child in a meaningful, supportive manner" [; to complete a court-ordered reunification plan;] or to support the child financially. OCGA § 15-11-94[ (b)(4)(C)(i)-(iii) ]. Once the trial court establishes a lack of parental care and control, the second part of the test for determining whether parental rights should be terminated is whether such termination "is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." OCGA § 15-11-94(a).
(Citation omitted.) In the Interest of S.H., 251 Ga.App. at 557(1)(b), 553 S.E.2d 849.
Viewed in the light most favorable to the State, as appellee, the record shows that the Fulton County Department of Family & Children Services ("DFACS") took temporary legal custody of the three boys in June 1995 following reports of neglect and physical abuse by the parents. At the time they were removed from the parents' home, L.E.C., Jr. was three years old, F.M.C. was two years old, and L.E.C. III was one year old. Social workers with AGAPE, an agency that coordinated the boys' foster home placements, testified that the boys were "severely neglected," "medically fragile," had not been immunized, had uncorrected vision problems, suffered delays in their speech and mental development, and had other medical and behavioral problems. According to the initial deprivation order, the father had physically abused the children, the court was "concerned" that the mother had also abused the children, and the court found the children to be deprived. The juvenile court ordered the mother to undergo a thorough psychological evaluation and attend parenting classes.[1]
DFACS placed the boys in foster care and developed reunification plans for the mother.[2] The plans required the mother to get a psychological evaluation, obtain counseling, take parenting classes, secure a stable home and finances, visit the children regularly, and stay in contact with DFACS. The boys had alternating weekend visits with their mother. *59 Social workers with AGAPE testified that the boys returned from the visits dirty and wearing the same clothes they were wearing when they left for visitation days earlier. The boys "reeked" of cigarette smoke, even though the children had respiratory problems and the mother had been instructed to keep them away from smokers. The mother did not allow F.M.C. to wear his glasses during the visits and failed to give the oldest child his medications as prescribed. The youngest child appeared as if his diaper had not been changed over the weekend.
In February 1996, a DFACS caseworker temporarily refused to allow the boys to visit with the mother, but the juvenile court threatened the caseworker with contempt and ordered her to arrange visitations. Although visitation opportunities immediately resumed, the mother stopped visiting the children after May 28, 1996.
The mother moved to Tennessee in June 1996. During a 1997 home study visit to the mother's Tennessee home by a child advocate, made in anticipation of reunification, the advocate described the house as "chaotic," with mounds of clothing and "stuff" on the floor and beds. The advocate also testified that she discovered the father hiding in the backyard during that home visit. According to the advocate, both the mother and grandmother denied that the man was the boys' father until the man, himself, admitted to his true identity.
In addition to evidence of past deprivation caused by parental inability or misconduct, the juvenile court heard testimony from psychologists that the two oldest boys currently suffer from learning disabilities, language difficulties, behavioral problems, and attention deficit hyperactivity disorder and that they require special education classes and ongoing counseling. The psychologists also testified that the boys have no parental bond with their mother, that they do not remember their mother, and that they do not understand the significance of the fact that she is their birth mother. In fact, one psychologist stated that placing F.M.C., the middle child, with his mother at this point would be "unification" as opposed to "reunification," because the child did not remember being with his mother. The psychologists also opined that the boys are adjusting well in foster care, that their mental difficulties and behavioral problems have improved over time, and that returning the children to their mother would confuse the boys and be disruptive to their emotional health.
In fact, the record indicates that the mother is unaware of the extent of the boys' needs and unable to provide for them. Since moving to Tennessee in June 1996, the mother has seen the boys only twice, during a case panel review and a court hearing. She has not seen or contacted the boys at all since February 1998. In addition, she failed to provide any financial support or send cards or presents while the children were in DFACS's custody. The evidence also showed that the mother has been unemployed since moving to Tennessee and currently lives with the children's maternal grandmother. The grandmother provides the family's financial support through her Social Security and retirement benefits. The grandmother's home has no phone. The mother has no driver's license, so she is unable to drive the boys to appointments for medical, psychological, and other treatment.
After considering the evidence presented during the termination hearings, the juvenile court found that the mother had "physically, mentally, and emotionally neglected the children" before they were removed from her care; failed to visit or contact the children for over twenty-four months before the termination petition was filed; failed to contact AGAPE or DFACS about the children; failed to provide any support to the children during their six years of DFACS's custody; failed to provide any gifts or cards for birthdays or special occasions during the past twenty-four months; and failed to complete the requirements of her reunification case plan. It also found that there was no parental bond between the mother and the children due to the lack of contact. In addition, the juvenile court found that the children were developmentally delayed prior to 1995, but have made substantial progress while in DFACS's custody. Because of the lack of contact with their parents, the special needs of the children, and the mother's demonstrated *60 inability to provide for the children in the future, the juvenile court determined that the children's deprivation is likely to continue and cause harm to the children. The juvenile court concluded that it was in the children's best interests to terminate the parental rights of the mother.
On appeal, the mother contends the evidence presented showed only past neglect, not present parental inability or misconduct, and that there was no evidence that the children's deprivation is likely to continue. We disagree.
The State presented substantial evidence that there was no parent-child bond between the mother and the boys, primarily because of the length of time the children had been in DFACS's custody, their young age when they were removed from the mother's home, the mother's failure to contact or visit the children since February 1998, and her infrequent visits prior to that time. This evidence is sufficient to find present parental inability or misconduct under OCGA § 15-11-94(b)(4)(C), as long as the failure to maintain a parental bond was not due to some justifiable cause.
In this case, the mother and the boys' maternal grandmother both testified at the hearings and contended that the mother repeatedly called DFACS and the AGAPE social workers to arrange visitation with the boys. They alleged that DFACS and the social workers prevented the mother from seeing the boys. AGAPE social workers testified, however, that the mother had been directed to contact them regarding visitation and that the mother never contacted them about visitation or the well-being of the children after May 1996. One of the social workers testified that the mother was never denied visitation between April 1996 and November 1999, when the social worker left AGAPE.[3] As noted above, after hearing all of the testimony, the juvenile court specifically found that the mother failed to contact the children after February 1998 and that she had "little or no contact" with DFACS or AGAPE after this time. We find that there was sufficient clear and convincing evidence for a rational trier of fact to find present parental inability or misconduct due to the mother's failure to maintain a parental bond with her children through visits or other contact during the past year. See In the Interest of J.M.B., 231 Ga.App. 875, 878(1)(b), 501 S.E.2d 259 (1998).
As to whether this deprivation is likely to continue in the future, this Court has previously held that,
[i]n addition to evidence of present parental misconduct or inability, evidence of past conduct may be considered in determining whether the deprivation would be likely to continue. Such an inference is appropriate, since the juvenile court is not required to reunite [the boys] with [their mother] in order to obtain current evidence of deprivation.
(Citations and punctuation omitted.) In the Interest of E.C., 225 Ga.App. 12, 16, 482 S.E.2d 522 (1997); see also In the Interest of J.M.B., 231 Ga.App. at 878(1)(c), 501 S.E.2d 259; OCGA § 15-11-94(b)(4)(A)(iii). Further, "[t]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) In the Interest of S.H., 251 Ga.App. at 558(1)(b), 553 S.E.2d 849.
The mother argues on appeal that there is insufficient evidence to show that the boys would be deprived in the future because her situation has improved significantly since the boys were removed from her home six years ago. She asserts that she currently lives in two connected double-wide trailers with six bedrooms and that this home is sufficient to house her, the three boys, her other four children, and the children's maternal grandparents. She contends that, even though she is unemployed, the children will be provided for, although she does not specify how. We note, however, that the juvenile court expressly found that the mother's testimony regarding her present living circumstances and her ability to support the children *61 was not credible. Accordingly, such evidence would not support a reversal on appeal of the juvenile court's determination that the children would continue to be deprived if reunited with the mother.
On the contrary, the evidence shows that the boys suffer from substantial medical and psychological needs, that the mother has not cared for the boys in six years, and that she is generally unfamiliar with their special needs. This lack of familiarity can be directly attributed to the fact that the mother has had little contact with the boys since May 1996. This evidence, coupled with her failure to complete counseling, her current unemployment and lack of any employment history for the past five years, and her lack of an identifiable source of income, a phone, or driver's license, supports a finding that the boys' deprivation would continue if they were reunited with their mother. See In the Interest of E.C., 225 Ga.App. at 17, 482 S.E.2d 522; cf. Shover v. Dept. of Human Resources, 155 Ga.App. 38, 270 S.E.2d 462 (1980) (reversing the termination of parental rights when the only evidence of parental misconduct or inability was the mother's poverty). There was also sufficient evidence that the children would be seriously harmed by reunification, given the lack of bonding with their mother, their special needs, and their significant progress during their years in foster care. OCGA § 15-11-94(b)(4)(A)(iv).
Finally, the same evidence which shows the existence of parental misconduct or inability also supports a finding that the termination of parental rights would be in the children's best interests. In the Interest of J.M.B., 231 Ga.App. at 879(2), 501 S.E.2d 259; In the Interest of E.C., 225 Ga.App. at 18, 482 S.E.2d 522; OCGA § 15-11-94(a). We find that the trial court's determination that termination of the mother's parental rights is in the children's best interests was supported by clear and convincing evidence.
Judgment affirmed.
JOHNSON, P.J., and RUFFIN, J., concur.
NOTES
[1] Over the next five years, for reasons explained below, the juvenile court repeatedly extended the deprivation order and renewed DFACS's custody of the children. In February 1998, a Citizens Review Panel recommended that the parents' rights be terminated. DFACS filed a petition to terminate the parental rights of the boys' mother and father on May 26, 2000.
[2] Because of allegations of physical abuse, the juvenile court issued a restraining order against the father requiring him to stay away from the boys; the order also required the mother to call the police if he came to her home. The father's parental rights were also terminated in this action. He did not participate in this appeal.
[3] The juvenile court found that the mother did attempt to visit the children after the termination petition was filed in May 2000, but that the court determined then that it would not be in the children's best interests.