A02A0026. IN THE INTEREST OF T. W., a child.
(566 SE2d 405)

ANDREWS, Presiding Judge.

The mother of T. W. appeals from the juvenile court's order terminating her parental rights. After reviewing the record on appeal, we conclude there was clear and convincing evidence to support the juvenile court's decision and affirm.

T. W., who was born July 3, 1994, was taken into custody by the Department of Family & Children Services (the Department) on July 15, 1997. On that date, police responded to a call from a relative about possible child abuse. The relative said she had seen the mother throw T. W. into the car, and the mother admitted at trial that she put the child in the car and left him there with the windows rolled

up, even though it was the middle of July. The police officer found the mother to be very upset, shaking, and nervous and stated in his report that she appeared to be mentally unstable. The mother told the officer that T. W. was getting on her nerves and that she was having a mental breakdown. The relative told police that the mother had abused T. W. in the past, and the officer's report states that the child had marks on his arms, legs, and back which T. W. said were "boo boo's from his mom." The relative also informed the officer that the mother used drugs and had threatened recently to kill the child.

T. W. was found to be deprived, and the Department placed him in a foster home. A reunification plan was developed under which the mother was required to take parenting classes, undergo a psychological evaluation and attend therapy sessions, and schedule regular visits with T. W.

For a period of time, the mother appeared to be meeting the goals of the reunification plan and was allowed unsupervised visits with T. W. But, after three unsupervised weekend visits, the mother called the Department caseworker, crying and hysterical. She told the caseworker that she had been lying to her and she had a significant drug problem and wanted to get treatment for it. The mother admitted at the hearing to problems with marijuana and crack cocaine use. At that point, the unsupervised visits were discontinued, and the reunification plan was amended to require that the mother remain drug free, complete a drug treatment program, and find stable employment and suitable housing.

The mother, who was in jail at the time of the hearing on the termination petition, acknowledged that she did not have a job or a suitable home for T. W. She testified that she had been in several drug treatment programs and this treatment was ongoing when she was taken into custody. She also admitted that she had not visited with her child since June 1999. The mother said she called the Department in September 1999 to schedule a meeting but she was arrested before the visitation could occur. The mother testified that she was taking classes in jail and had completed several programs such as life skills and parenting. She stated that she loved her son and wanted to be a better parent to him.

The psychologist who worked with the mother and child under the reunification plan testified that the mother came to weekly sessions for approximately three months. She stated that the sessions ended abruptly when the mother began missing the weekly visits. The psychologist asked her why she stopped coming, and the mother told her that she was using drugs and was having a difficult time. The psychologist testified that it was her opinion that "it would be virtually impossible for [the mother] to take the responsibility for that child."

The guardian ad litem recommended termination of the mother's parental rights, noting that she did not have stable housing or employment and there had been no successful completion of a drug treatment program.

The Department caseworker testified that T. W. had "significant" behavioral problems when taken into the Department's custody. Since that time, he had improved considerably and was able to follow instructions and get along with his peers without fighting, hitting, or biting. Nevertheless, he was still in a special education class and attended weekly counseling sessions. The child was currently placed with the mother's aunt and uncle and was "doing very well" with them.

The trial court granted the Department's petition and terminated the mother's parental rights. This appeal followed.

> Under OCGA § 15-11-94 (a) (formerly OCGA § 15-11-81), the considerations for terminating parental rights involve a two-step process. The trial court must first determine "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-94 (a). Such misconduct or inability may be proved by showing (1) the child is deprived; (2) such deprivation is caused by the lack of proper parental care or control by the parent in question; (3) the deprivation is likely to continue; and (4) the "continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-94 (b) (4) (A) (i)-(iv). Further, in determining whether there is a lack of "proper parental care and control," the court may consider several factors, including the . . . [past or present] "(p)hysical, mental, or emotional neglect of the child." OCGA § 15-11-94 (b) (4) (B) (v). If the child is not in the custody of the parent in question, the lack of proper parental care and control can be demonstrated by showing that the parent, without justifiable cause, failed for a period of one year prior to the filing of the termination petition to "develop and maintain a parental bond with the child in a meaningful, supportive manner"[; to complete a court-ordered reunification plan;] or to support the child financially. OCGA § 15-11-94 (b) (4) (C) (i)-(iii). Once the trial court establishes a lack of parental care and control, the second part of the test for determining whether parental rights should be terminated is whether such termination "is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the

child who is the subject of the proceeding, including the need for a secure and stable home." OCGA § 15-11-94 (a).

(Citations and punctuation omitted.) *In the Interest of L. E. C.*, 253 Ga. App. 82, 83 (558 SE2d 56) (2001).

On appeal, we view the evidence in a light most favorable to the juvenile court's ruling and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated. *In the Interest of L. E. C.*, supra at 82.

1. There was clear and convincing evidence of present parental misconduct or inability under OCGA § 15-11-94 (a). As discussed above, the mother was in jail at the time of the termination hearing. She had no job and no home and could not presently care for T. W.

2. There was also clear and convincing evidence that the deprivation was likely to continue and likely to cause serious harm to T. W. OCGA § 15-11-94 (b) (4) (A) (iv). At the time of the hearing on the termination petition, December 22, 1999, T. W. had been in foster care since July 1997. The mother acknowledged at the hearing that she had been unable to keep a job, had no suitable home for T. W., and was in jail. In the almost two and a half years that T. W. had been in the Department's custody, the mother had made no progress in reuniting with T. W.; rather, just the opposite. Before she was taken to jail, the mother acknowledged that she had been spending less and less time with T. W. Moreover, the mother did not give the court any indication of how long it would be before she was able to take care of the child. The mother promises that she will eventually find a job and a home and remain drug free. But, the decision as to a child's future must rest on more than positive promises that are contrary to negative past fact. *In the Interest of N. M. H.*, 252 Ga. App. 353, 357 (556 SE2d 454) (2001). Judging the credibility of the mother's good intentions was a task for the juvenile court, and the past conduct of a parent properly may be considered by the court in determining whether conditions of deprivation are likely to continue. *In the Interest of L. H.*, 236 Ga. App. 132, 136 (511 SE2d 253) (1999). In light of this and the other evidence discussed above, there was clear and convincing evidence that the pattern of deprivation was likely to continue and to cause harm to the child.

3. The mother argues that she was not given a full year in which to comply with new goals that were added to her reunification plan. This Court has rejected the argument that the Department is under a statutory duty to make reasonable efforts to reunite a family for at least one year after the case plan is formulated. *In the Interest of C. W. S.*, 231 Ga. App. 444, 447 (498 SE2d 813) (1998); *In the Interest of V. S.*, 230 Ga. App. 26, 30 (495 SE2d 142) (1997); *In the Interest of*

*A. M. B.*, 219 Ga. App. 133, 134 (464 SE2d 253) (1995). Here, the Department worked with the mother on her reunification plan for almost two years before filing the termination petition. There was no error.

4. If the first prong of the test is met, the trial court considers whether termination of the parental rights is in the best interest of the child. In looking at this second prong, the court may consider the child's need for a stable home environment and the detrimental effects of prolonged foster care. *In the Interest of J. M. C.*, 201 Ga. App. 173, 175 (410 SE2d 368) (1991). The court may also look at the same factors which show parental inability to care for the child to support a finding that termination of parental rights would be in the child's best interest. *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (370 SE2d 490) (1988). The same evidence showing parental misconduct may, and in this case does, satisfy this requirement. *In the Interest of C. L. R.*, 232 Ga. App. 134, 138 (501 SE2d 296) (1998). In addition, the juvenile court could consider the testimony at the hearing that the child was attending regular counseling sessions, his behavioral problems were improving, and he was well and happy in foster care.

Accordingly, the child's need for a stable home environment, the mother's past and present unfitness to care for him, and her failure to show that she will be able to provide for him anytime in the near future were sufficient clear and convincing evidence that termination was also in the best interest of the child. *In the Interest of J. M. C.*, supra; *In the Interest of T. R. G.*, 162 Ga. App. 177 (290 SE2d 523) (1982).

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED JUNE 7, 2002.

*Chandler R. Bridges*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, Robert G. Nardone*, for appellee.