586 S.E.2d 678 (2003)
262 Ga. App. 833
In the Interest of C.B.H. et al., children.
No. A03A1062.
Court of Appeals of Georgia.
August 8, 2003.
Reconsideration Denied August 21, 2003.
*679 Mark J. Nathan, Savannah, for appellant.
Thurbert E. Baker, Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., Beckmann & Lewis, Leo G. Beckmann, Jr., Savannah, for appellee.
ANDREWS, Presiding Judge.
The mother of C.B.H. and C.L.G. appeals from the juvenile court's order terminating her parental rights.[1] She claims that the court erred in finding that the children's deprivation was likely to continue or would likely not be remedied. She also contends that, after determining that her parental rights should be terminated, the juvenile court erred in not awarding custody to either her parents or her brother. After reviewing the record, we conclude there was no reversible error and affirm.
On appeal from an order terminating parental rights, we view the evidence in the light most favorable to the juvenile court's ruling and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. In the Interest of D.B.P., 262 Ga.App. 1, 584 S.E.2d 256 (2003).
So viewed, the evidence shows that the children, C.B.H. and C.L.G., both boys, were aged three and seven respectively at the time of the petition to terminate. At the time of the hearing on the petition, the mother was serving a five-year prison sentence for theft by deception, shoplifting, and writing a bad check.
The first case manager assigned to this case by the Department of Family and Children Services (Department) testified that the Department first became involved with the children in January 2000. She stated that there were several unsubstantiated incidents with the children before the first substantiated allegation, which was that the children were being molested by their stepfather.[2]
The next time the Department was called about the children was when police found C.B.H. alone in the car while the mother was inside a convenience store playing a video game. After this incident, C.B.H. was placed in a foster home and C.L.G. remained with the maternal grandparents. C.L.G. was subsequently removed to foster care as well. The juvenile court found the children were deprived and that order was never appealed. The caseworker stated that she tried to work with the mother on a reunification plan but the mother was uncooperative and would not go for the required drug screening. The caseworker testified that the children were not left in the care of the maternal grandparents because they told her they could not care for the children long-term because of their health. The caseworker also stated that the mother and grandmother did not get along and there was a domestic violence charge arising out of one of their altercations.
The current case manager for the children testified that when she received the case, the mother was in jail on an arson charge. There was a reunification plan in place for the mother; under the plan, the mother was supposed to complete a psychological evaluation, attend parenting classes, visit regularly with the children, obtain and maintain stable housing and employment, enter a drug treatment program, and submit to random drug screens. At some point, it appears the mother was released from jail because she did undergo psychological testing and attended parenting classes. She visited with the children. But, she had three positive drug screens in a two-month period and also had problems maintaining housing and employment. The evidence shows that the mother had five jobs in the six months before she was arrested again in November 2001. Although the mother never completed a substance abuse assessment, she did have several *680 negative drug screens before her arrest. The mother pled guilty to theft by deception, shoplifting, and writing a bad check, and was sentenced to five years with a release date of November 2006. The caseworker said she felt it would be detrimental for the children to remain in foster care indefinitely and she thought they were prime candidates for adoption. She stated that as of the time of the hearing, the mother had been in prison for almost a year and the children had seen her only once during that time.
When asked about possible placement with a relative, the caseworker testified that a background check of the mother's brother showed several DUI convictions. She testified that he was asked to complete an alcohol treatment program but did not do so. The brother also testified and acknowledged that he was unemployed and was not "financially stable" enough to have the children in his home.
The mother testified that she was presently in prison and was unable to parent the children at this time. She said that she could possibly be paroled as early as January of next year. She also stated that she had received her GED while in prison, and had taken anger management classes. She said the likelihood of her committing further offenses when she was released was "slim." She said she would like the children to be placed with her parents or her brother until she was able to care for them.
The maternal grandmother said that she wanted to have the children in her home and was able to care for them. She denied ever stating that she could not care for the children. The maternal grandfather, when asked if he was physically and mentally able to care for the children, replied that he was sure that he and his wife, together with their son and his wife and brother-in-law and his wife, between the three families, could take excellent care of the children.
The foster mother stated that the children were very attached to their mother, and the guardian ad litem testified that he believed the mother should be given another chance at reunification.
The court-appointed special advocate said she had worked with the family for two years. She stated that the maternal grandparents told her they were not capable of taking care of the children because of medications they were on and because they could not physically handle them. She stated that she tried to find some relative to take the children but no one volunteered. Finally, after being in foster care for over a year and a half, she said she was recommending a permanent home for the children. The children's advocate said that she tried to work with the mother and help her with the reunification plan but the mother "thought [she] was out to get her" and did not cooperate. The advocate said she would not recommend placing the children with the grandparents. She stated that although they said they wanted the children when their daughter was present, they said very different things when their daughter was not present.
The court found that the children were deprived and the deprivation was likely to continue. The judge held that it was in the children's best interests to have a permanent home and granted the petition for termination. This appeal followed.
Termination of parental rights under OCGA § 15-11-94 requires a juvenile court to find that there is clear and convincing evidence of parental misconduct or inability and that termination is in the child's best interest. Subsections (a) and (b)(4)(A) of that Code section require a court to determine parental misconduct or inability by finding each of four factors: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.
In the Interest of T.J.J., 258 Ga.App. 312, 314, 574 S.E.2d 387 (2002). This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met. Id.
Once the trial court establishes a lack of parental care and control, the second part of the test for determining whether parental rights should be terminated is whether such *681 termination "is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home. OCGA § 15-11-94(a)." (Punctuation omitted.) In the Interest of T.W., 255 Ga.App. 674, 676-677, 566 S.E.2d 405 (2002).
1. The mother does not dispute that the children are deprived or that lack of proper parental care is the cause of the deprivation. She argues on appeal that the evidence did not support the finding that deprivation was likely to continue or would not likely be remedied as required by OCGA § 15-11-94(b)(4)(A). She claims that evidence of past unfitness, standing alone, is insufficient and the court must find evidence of present unfitness also. The mother points out that although she is in prison, she continues to communicate with the children, has visited once with the children since her imprisonment, has taken anger management classes, received psychological counseling, and completed her GED. She also states that the foster mother testified that it would harm the children if they were separated from their mother, and the guardian ad litem recommended that her rights not be terminated.
Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue. OCGA § 15-11-94(b)(4)(A). In this case, there is not only past deprivation, but present deprivation also. The mother was in jail and was unable to give the court any time frame in which she would not only be out of prison, but be able to care for and support her children. Moreover, it is apparent from the grandparents' testimony that the mother was not taking care of her children before she went to prison. The grandmother testified that "basically since birth, these babies have been under our roof."
The caseworker testified that the mother was unable to comply with the reunification plan before she went to prison, and the court-appointed advocate testified that the mother refused to cooperate with her, despite her best efforts to reunite the family.
Although the mother stated that she wanted her children with her and would try to make a home for them when she got out of prison, judging the credibility of her good intentions was a task for the juvenile court. In the Interest of B.R.W., 242 Ga.App. 232, 237, 530 S.E.2d 5 (2000). Decisions as to a child's future must rest on more than mere promises that are contrary to past fact. In the Interest of T.W., supra at 677, 566 S.E.2d 405. Accordingly, the court was entitled to infer from the evidence that, despite the best efforts of the Department and the court-appointed advocate, the same pattern of deprivation would continue if the children were reunited with their mother. In the Interest of J.J., 259 Ga.App. 159, 165, 575 S.E.2d 921 (2003).
Although not raised on appeal, we also conclude there was sufficient clear and convincing evidence that termination was in the best interests of the children. The same factors which show a parent's inability to properly raise her children may also provide evidence that termination is in the best interests of the children. In the Interest of B.R.W., supra at 238, 530 S.E.2d 5. In light of the children's need for a permanent and secure home and the evidence that the mother will be unable to care for the children in the foreseeable future, the juvenile court was authorized to find that termination was in the children's best interests. Id.
2. The mother also claims the juvenile court erred in not considering her parents or her brother for placement after terminating her parental rights. OCGA § 15-11-103(a)(1) provides that after termination the court shall first attempt to place the child with a relative or family member, but only if such a placement is in the best interests of the child.
In this case, the juvenile court was authorized to find that placement with the grandparents or uncle was not in the best interests of the children. Even without considering the evidence of his alcohol abuse, the brother himself testified that he was unable to have the children in his home.
The Department's caseworker and the court-appointed advocate both testified that *682 the children's grandparents told them on numerous occasions that they could not take the children. There was testimony that in November 2001, about the time the mother was arrested, the grandmother told her they could not take the children and she knew of a good orphanage in South Carolina where the children could go. In light of this evidence, we cannot say the trial court abused its discretion in determining that placement with the mother's parents or brother was not in the best interests of the children. In the Interest of B.R.W., supra at 241, 530 S.E.2d 5; In the Interest of M.R., 213 Ga.App. 460, 467, 444 S.E.2d 866 (1994).
Judgment affirmed.
BARNES and ADAMS, JJ., concur.
NOTES
[1] Neither of the fathers is a party to this appeal.
[2] The stepfather eventually pled guilty to child molestation.