A04A1093. IN THE INTEREST OF R. S. H. et al., children.

(603 SE2d 675)

MIKELL, Judge.

Appellant mother appeals the termination of her parental rights to R. S. H., F. V. H. and D. M. H. She argues that the juvenile court erred in finding clear and convincing evidence that her parental rights have been lost. We affirm.

> In considering a challenge to the sufficiency of the evidence supporting an order terminating parental rights, this Court is required to view the evidence in the light most favorable to the appellee, here the [Screven County Department of Family and Children Services (the "Department")], and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost. We do not weigh the evidence or determine the credibility of the witnesses but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.

(Citation omitted.) *In the Interest of S. L. B.*, 265 Ga. App. 684 (595 SE2d 370) (2004). Viewing the evidence in favor of the Department, the record shows that the Department first became involved with appellant on May 28, 2001, after receiving complaints of neglect by appellant of R. S. H. and F. V. H., then aged three years old and one year old, respectively. At that time, appellant was living with Bennie Howard, her biological father and the father of F. V. H. The Department learned that appellant had been involved in a consensual sexual relationship with Howard for some time and that appellant was pregnant with her third child as a result of her involvement with another man, Carl Stanley. According to a Department report, the residence was overcrowded, and appellant did not demonstrate the cognitive ability to provide for her children's basic needs. The Department opened a child protective services case and established a case plan to assist appellant with coping skills, prenatal care, housing, Temporary Assistance for Needy Families (TANF) benefits, a GED, employment, and counseling. The Department also instructed appellant to stay away from Howard. Appellant failed to cooperate with these requirements and/or stay in touch with the Department.

Appellant eventually moved with the children into her mother's home and on September 17, 2001, provided a written statement to law enforcement about her sexual relationship with Howard and her fear that Howard might sexually abuse F. V. H. In January 2002, the Department learned that appellant was living in Effingham County

with Howard. On February 6, 2002, the Effingham County Department of Family and Children Services (the "Effingham Department") determined that appellant, R. S. H., and F. V. H. were living with Howard in "deplorable" conditions (roach infestation, and trash and animal feces on the floor) and that the children were dirty and inappropriately dressed. The Effingham Department developed a second safety plan, which required appellant to return to Screven County and live with her sister. When appellant failed to comply with that plan, the Effingham Department attempted to locate appellant and found her and the children sleeping in a car with Howard. At that time, appellant was due to give birth to D. M. H. in two weeks. The Department sought emergency custody of R. S. H. and F. V. H. and placed them in the home of R. S. H.'s paternal grandmother, Evelyn Hubbard. D. M. H. was born on February 27, 2002, and placed in foster care.

The Department filed a deprivation petition on March 1, 2002. Following a hearing, the juvenile court, by order entered April 15, 2002, found that the children were deprived and granted to the Department temporary legal custody. This order was never appealed. The Department established a reunification plan which required appellant to obtain and maintain a source of income as well as stable, clean, and safe housing; attend parenting skills classes; submit to a psychological evaluation and follow any and all treatment recommendations; remain in regular contact and cooperate with the Department and child support enforcement; and attend all scheduled visitation sessions with the children. Appellant failed to comply with the reunification plan.

In early April 2002, the Department met with Hubbard about the placement of R. S. H. and F. V. H. Initially, Hubbard had agreed to care for the two children on a short term basis so that appellant could have daily contact with them. Hubbard advised the Department that appellant was not taking advantage of this opportunity. The Department and Hubbard decided to move the children from Hubbard's home and place them together with D. M. H. in the same foster home. Appellant was allowed to visit with the children for two hours every other week at the Department's office, but often showed up late.

At appellant's urging, the Department evaluated appellant's mother as a relative placement for the children. The Department denied that evaluation finding that appellant's mother was untruthful, unemployed, severely depressed, and had failed to protect her own daughter from sexual abuse.

The Department subsequently sought and obtained court approval to change the plan from reunification to nonreunification pursuant to a written order entered by the juvenile court on January 10, 2003. Following a hearing on February 12, 2003, the juvenile

court entered an order on February 27, 2003, extending the Department's temporary legal custody of the children to which appellant consented.

The Department filed a petition to terminate the parental rights of appellant and any and all fathers on May 19, 2003. The juvenile court conducted a hearing on the petition on July 3, 2003.

Cynthia Lee, a case manager with the Department, testified that appellant understood but failed to comply with any of the four case plans developed by the Department. By the time the children had been in the Department's custody for nine months, appellant had been given her third case plan, did not have a stable income, job or housing, had not attended any counseling or parenting classes, did not take the drug tests requested by the Department and had not paid any child support. Lee acknowledged that appellant rarely missed scheduled visits with the children, but she described those visits as "disturbing." Appellant could not control the children and spent several visits talking on her cell phone while the children ransacked the room. Additionally, despite Lee's attempts to demonstrate proper control techniques, appellant showed no improvement.

Lee acknowledged that the Department initially had not made available parenting classes because it did not have sufficient financial resources and because appellant had more serious issues to address. However, on October 21, 2002, Lee sent to appellant a letter instructing her about parenting classes beginning on October 28, 2002. Appellant never attended the classes.

By April 2003, appellant had found employment; however, she was $1,200 in arrears in child support and was living with Stanley and his two children at his parents' home. By May 2003, appellant and Stanley had moved in with appellant's former stepfather, and appellant had been laid off. During a visit with the children on July 2, 2003, appellant told Lee that she had married Stanley on May 30, 2003.

According to Lee, appellant still has unresolved mental health issues; her life is unstable and she moves from place to place; she lacks basic parenting skills; she assumes no responsibility for why her children are in foster care or for her future; she has a chronic history of making irresponsible decisions related to herself and her children; and despite the Department's efforts to reunite appellant with her children, she has not taken advantage of these opportunities. Lee also confirmed that appellant has been arrested for incest.

Cathy McMichael, a social worker with Behavioral Intervention Services, testified that the Department asked her organization to conduct a family assessment and psychological evaluation on appellant in May 2002. Appellant was diagnosed with generalized anxiety disorder, bipolar disorder, and dependent personality disorder with

negativistic personality traits, paranoid personality features, and avoidant personality features. McMichael testified that appellant had no parenting ability and that without extensive parenting instruction and counseling, the children would suffer if they were returned to appellant.

Stanley confirmed his marriage to appellant on May 30, 2003, and testified that he has made efforts to legitimate R. S. H., including applying for a new birth certificate. Stanley testified that his children, aged twelve years old and ten years old, love appellant and that she is "real good" at caring for them. He also stated that he wants appellant's children to come live with them. He has never paid any child support for R. S. H.

Michael Waters, appellant's former stepfather, testified that his home has four bedrooms and two baths and that appellant is stable. He also testified that she suffered major depression when her uncle died but has shown a dramatic improvement since then.

Appellant testified that she became overwhelmed and depressed after her experience with Howard and the death of her uncle and that she has been depressed for three years but has since come out of her depression. She is now taking antidepressants and has a very good relationship with Stanley. She testified that she has not had contact with Howard in the past year except for one phone call. Appellant testified that she never completed a parenting class but that she would go now if given the chance. Appellant confirmed that she was laid off from her last job in May 2003. She also admitted that she understood all of her reunification case plan goals, but that she did not make any effort to comply with those goals until after the termination petition was filed.

At the close of the hearing, the guardian ad litem appointed to represent the children recommended that the juvenile court terminate appellant's parental rights.

On August 26, 2003, the juvenile court entered its order terminating appellant's parental rights to R. S. H., F. V. H., and D. M. H. The juvenile court concluded that the children were deprived, that the lack of parental care and control by appellant caused the deprivation, and that the "causes of the deprivation are likely to continue and will not be remedied." In reaching this conclusion, the juvenile court found that the Department offered to appellant necessary resources, but that appellant "did not avail herself of these resources." It further found that "the children here suffered[,] are suffering and will continue to suffer in the future as a result of the profoundly detrimental and egregious conduct of the [appellant]."

Appellant contends that the court erred in finding sufficient evidence to support the termination of her rights. Specifically, appellant argues that there is insufficient evidence to show that the

children's deprivation likely would continue in the future, and the juvenile court's decision is based on a misunderstanding of McMichael's testimony and an absence from the record of Behavioral Intervention Services' family assessment and psychological evaluation. We disagree.

OCGA § 15-11-94 (a) sets out a two-part procedure for termination cases. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability, as defined in subsection (b) of the statute. Parental misconduct is found when: (1) the child is deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A) (i)-(iv). Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, "[it] shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child . . . , including the need for a secure and stable home." OCGA § 15-11-94 (a). See *In the Interest of D. L. D.*, 248 Ga. App. 149, 152 (546 SE2d 11) (2001).

Applying the four factors provided in OCGA § 15-11-94 (b) (4) (A) to this case, we find ample evidence to support the juvenile court's finding of parental misconduct or inability. First, appellant is bound by the juvenile court's prior deprivation orders, which were never appealed. See *In the Interest of J. S. G.*, 242 Ga. App. 387, 388 (1) (529 SE2d 141) (2000); *In the Interest of D. M. H.*, 242 Ga. App. 47, 48 (1) (528 SE2d 816) (2000). Moreover, the evidence summarized above warrants a finding of deprivation even in the absence of the unappealed orders. The second factor requires a showing that the lack of proper parental care or control caused the deprivation. OCGA § 15-11-94 (b) (4) (A) (ii). Subparagrah (b) (4) (B) of the statute provides six conditions that the court may consider, including

[a] medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child; . . . [e]gregious conduct or evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature; [and] [p]hysical, mental, or emotional neglect of the child or evidence of past physical, mental, or emotional neglect of the child or of another child by the parent.

OCGA § 15-11-94 (b) (4) (B) (i), (iv), (v). The juvenile court properly found that these conditions existed in appellant's case. In particular, appellant engaged in a consensual sexual relationship with her biological father and bore a child from that relationship. Further, McMichael and Lee testified that appellant had been diagnosed with several psychological disorders, and Lee testified that appellant failed to obtain needed counseling. Appellant acknowledged her failure to obtain counseling and only sought treatment after the Department filed the petition for termination. Additionally, the record establishes that appellant did not accomplish the goals of the reunification plan. She failed to maintain stable employment and to maintain stable, appropriate, and sanitary housing; she did not successfully complete the recommended parenting classes or obtain her GED; and she did not make regular child support payments and was $1,200 in arrears at the time of the hearing.

a. Appellant argues that the evidence is insufficient to show that the children's deprivation likely would continue in the future. We disagree.

"The past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue." (Citation and punctuation omitted.) *In the Interest of D. I. W.*, 215 Ga. App. 644, 646 (1) (451 SE2d 804) (1994). See *In the Interest of C. B. H.*, 262 Ga. App. 833, 836 (1) (586 SE2d 678) (2003), citing OCGA § 15-11-94 (b) (4) (A) ("[a]lthough past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue").

Contrary to appellant's argument, her promises to continue counseling and to stay away from Howard do not prevent the juvenile court from considering her admitted history of psychological problems and its effect on her ability to be a parent and the fact that she had an incestuous relationship with her biological father. See *In the Interest of R. N.*, 224 Ga. App. 202, 204 (1) (c) (480 SE2d 243) (1997). Moreover, although appellant contends she has now changed, judging the credibility of her good intentions was a task for the juvenile court. *In the Interest of T. W.*, 255 Ga. App. 674, 677 (2) (566 SE2d 405) (2002). "[T]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) *In the Interest of D. I. W.*, supra. But see *In the Interest of T. B.*, 249 Ga. App. 283, 286 (1) (548 SE2d 45) (2001) (where mother had been employed continuously for almost one year, had been living in the same apartment for almost one year, had enrolled in mental health and substance abuse counseling and had paid child support, evidence was insufficient to support juvenile court's finding that mother's lack of proper parental care and control

is likely to continue). The record clearly demonstrates that appellant did not begin to comply with her case plan goals until after the petition for termination was filed. In light of appellant's past actions, it was within the juvenile court's discretion to reject this "last ditch effort."

The same evidence demonstrating that the children's deprivation is likely to continue also supports a finding that continued deprivation would cause serious physical, mental, or moral harm to the children. *In the Interest of D. S.*, 247 Ga. App. 569, 573 (545 SE2d 1) (2001). Thus, the fourth factor in determining parental misconduct or inability was satisfied. OCGA § 15-11-94 (b) (4) (A) (iv). Finally, having found clear and convincing evidence of parental misconduct or inability, the trial court properly determined that termination of appellant's parental rights was in the children's best interests. OCGA § 15-11-94 (a). "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citation and punctuation omitted.) *In the Interest of C. N. H.*, 238 Ga. App. 50, 53-54 (2) (517 SE2d 589) (1999). Further, the evidence showed that D. M. H. had been in foster care since his birth, that the older children had been in foster care since April 2002, and that they are thriving. In particular, Lee testified that F. V. H., appellant's child by her biological father, who at two years old could not walk, run or talk, had shown "phenomenal progress" as a result of intense therapy, but that the effects of her genetic background could surface at any time and must be monitored.

Given the children's progress in foster care, their mother's inability to manage her life and her past relationship with her biological father at a time when the Department was trying to reunify her with her children, the juvenile court was authorized to find that termination of the mother's parental rights serves the best interests of the children.

b. With regard to McMichael's testimony, the juvenile court found that, "McMichael stated that it would be in the best interest of [the] children to have parental rights terminated. . . . She then stated she was of the opinion the children would suffer if they were returned." Appellant argues that contrary to the court's finding, McMichael testified only that harm would be done to the children *if* they were returned *prior* to implementation of the agency's recommendations regarding one-on-one parenting instruction and counseling. The record shows that counsel asked McMichael the following question: "based upon your training, your experience, and your education, do you have an opinion that these children, which [sic] are deprived, would likely continue deprivation which would cause physical, mental, and emotional harm in the future if they were returned to

[appellant]?" McMichael responded, "I believe they would without the extensive parenting completed — and the counseling. The counseling was a very major part of this. . . ." Contrary to appellant's argument, the juvenile court did not misunderstand McMichael's testimony; at most, the juvenile court overstated her opinion. This error, however, was harmless, as there was more than sufficient evidence — even without McMichael's testimony — to authorize the juvenile court's decision to terminate appellant's parental rights.

c. Similarly, we reject appellant's argument that the absence from the record of the psychological evaluation or family assessment left the juvenile court without a proper evidentiary foundation for its decision. The transcript from the termination hearing clearly shows that both reports were admitted into evidence without objection. Further, Lee testified that at the family conference to consider relative placements for the children, appellant and her family agreed with the psychological assessment. Moreover, the nonreunification order entered by the juvenile court on January 10, 2003, which included factual findings regarding appellant's psychological evaluation, was never appealed. Absence of these reports from the record is certainly perplexing, but it is not grounds for reversal of the juvenile court's decision. Further, even without the reports, there is sufficient evidence to support the juvenile court's decision terminating appellant's parental rights.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 10, 2004 —
RECONSIDERATION DENIED AUGUST 27, 2004.

*James K. Kidd*, for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Shalen S. Nelson, Senior Assistant Attorneys General, Shepherd, Gary & McWhorter, Millard B. Shepherd, Jr.*, for appellee.