614 S.E.2d 150 (2005)
273 Ga. App. 39
In the Interest of S.R.B., a child.
No. A05A0575.
Court of Appeals of Georgia.
April 19, 2005.
*151 Nina M. Baker, Lagrange, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, James T. Hunnicutt, Lagrange, for appellee.
MIKELL, Judge.
S.R.B.'s biological mother, D.B., appeals the juvenile court's order denying her motion for new trial following the termination of her parental rights to the child. In her sole enumeration of error, D.B. argues that the Troup County Department of Family and Children Services ("DFCS") failed to prove by clear and convincing evidence that the cause of S.R.B.'s deprivation is likely to continue. We disagree and affirm.
OCGA § 15-11-94(a) sets out a two-part procedure for terminating parental rights. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability. Parental misconduct is found when: (1) the child is deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.[1] Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, the court "shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child ..., including the need for a secure and stable home."[2] In reviewing the sufficiency *152 of the evidence supporting a termination order, we view the evidence in the light most favorable to DFCS and determine whether, based on the criteria outlined above, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost.[3] "We do not weigh the evidence or determine the credibility of the witnesses but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review."[4]
As noted above, D.B. challenges only the court's finding as to the third criterion for determining parental misconduct or inabilitywhether the cause of the child's deprivation is likely to continue or will not likely be remedied.[5] Viewed in its proper light, the evidence relevant to this issue shows that DFCS opened a case on D.B. in 1994, two years before S.R.B. was born. At that time, D.B. had two children, G.B. and T.B., who were three and five years old, respectively. The juvenile court declared the children deprived, placed them in protective custody, and granted physical custody to their maternal grandparents. The deprivation order recites that D.B. and the children's father, G.M., admitted that they abused drugs and that the children were exposed to domestic violence. In 2000, the court granted legal custody of G.B. and T.B. to their maternal grandparents and ordered the parents to pay child support. Byrice Payton, D.B.'s mother, testified that D.B. failed to pay child support.
S.R.B. was born on March 18, 1996. His father is J.T.A caseworker testified at the termination hearing that DFCS opened a case on the child on October 4, 2000, after receiving a complaint that D.B. was homeless and had been physically abused by G.M. D.B. told the caseworker that G.M. pulled her around by the hair, chased her with a knife, and beat her up repeatedly. DFCS provided D.B. with an apartment, furniture, clothing, and medical attention.
A juvenile court investigator testified that D.B. was evicted from the apartment, left S.R.B. with a distant relative, and failed to pick him up. The child was having excessive bowel movements at school, and officials kept contacting the relative to fetch him or to bring him clothing. They were unable to contact D.B. The investigator took the child into protective custody on October 25, 2001. D.B. was found living in a motel with G.M. The juvenile court entered orders finding the child to be deprived and placed him in DFCS's custody. One such order, entered on January 2, 2002, recites that D.B. failed to provide a home for the child, failed to attend to his medical needs, and failed to pay child support for his siblings. D.B. admitted that the cause of her failure to provide for S.R.B. was her continued relationship with G.M. She told the court "she was going to leave him today." These orders were not appealed.
DFCS developed a reunification plan, which required D.B. to obtain and maintain a source of income and stable, safe housing for herself and the child, to take parenting classes, and to work with the case manager and S.R.B.'s foster mother to assure that the child's medical and counseling needs were met. The case manager testified that D.B. attended parenting classes but did not meet any other goal of her case plan. In fact, the counselor testified that D.B. refused to permit his service to conduct a home evaluation despite three attempts in July 2003. The juvenile court entered an order on November 6, 2003, changing the permanency plan to termination of parental rights and adoption. The court found that D.B. had no stable home or employment and continued to have a relationship with G.M., the man whom D.B. testified had caused her to lose custody of the child. D.B. did not appeal this order.
DFCS filed a petition to terminate the mother's parental rights on November 13, 2003. The hearing was held on January 27, 2004. Tiffany Duncan, a DFCS case manager, testified that D.B. had made no effort to regain custody of the child, was employed by G.M., and was living in a camper. She was unable to give Duncan an address. Payton, *153 D.B.'s mother, testified that D.B. continued to reside with G.M. "somewhere in Alabama" and that Payton did not know how to contact her. Payton believed that her daughter was unable to care for S.R.B.
D.B. testified at the hearing. She admitted that she was living in a camper but claimed to be "working toward" getting a house. She also admitted that she was working and living with G.M., although she denied that they were having a "relationship." When asked how her circumstances on the date of the hearing differed from those that existed at the time S.R.B. was taken into protective custody, D.B. claimed she had been promised a full-time job at Palm Harbor Homes.
Contrary to D.B.'s contentions, we hold that the evidence clearly and convincingly supports the juvenile court's finding that the cause of S.R.B.'s deprivation is likely to continue and will not likely be remedied. The juvenile court properly considered her past conduct in making this determination.[6] The evidence demonstrates that, despite assistance from DFCS, D.B. has maintained a relationship with a man who abused her; failed to pay child support; failed to maintain stable housing or employment; refused to cooperate with the DFCS counselor; and was unable to care for S.R.B. or his siblings. "[I]n determining present unfitness, the juvenile court was permitted to consider whether appellant had successfully demonstrated her ability to care for her other children."[7] Moreover, the court was entitled to discount D.B.'s promise to obtain stable housing and employment. "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact."[8] In any event, the credibility of her stated intentions was for the juvenile court to determine.[9] The court was entitled to infer from the evidence, including the unappealed deprivation orders and the testimony presented at the hearing, that the same pattern of deprivation would continue if S.R.B. were reunited with his mother.[10]
Judgment affirmed.
ANDREWS, P.J., and PHIPPS, J., concur.
NOTES
[1] OCGA § 15-11-94(b)(4)(A) (i)-(iv).
[2] OCGA § 15-11-94(a). See In the Interest of R.S.H., 269 Ga.App. 292, 296, 603 S.E.2d 675 (2004).
[3] In the Interest of S.L.B., 265 Ga.App. 684, 595 S.E.2d 370 (2004).
[4] (Citation omitted.) Id.
[5] OCGA § 15-11-94(b)(4)(A)(iii).
[6] See In the Interest of C.B.H., 262 Ga.App. 833, 836(1), 586 S.E.2d 678 (2003).
[7] (Citation omitted.) In the Interest of Z.B., 252 Ga.App. 335, 337-338(1), 556 S.E.2d 234 (2001).
[8] (Citations and punctuation omitted.) In the Interest of R.S.H., supra at 297(a), 603 S.E.2d 675.
[9] See In the Interest of C.B.H., supra.
[10] See In the Interest of J.J., 259 Ga.App. 159, 165, 575 S.E.2d 921 (2003).