A07A0067. IN THE INTEREST OF J. M. N. et al., children.
(645 SE2d 685)

BARNES, Chief Judge.

The mother of J. M. N., J. L. N., and T. A. J. appeals from the order of the juvenile court denying her motion for new trial following the termination of her parental rights. She contends that the juvenile court erred in finding the children deprived, erred in finding that proper parental care and control was the cause of the deprivation, erred in finding that the deprivation was likely to continue and not be remedied, and erred in denying her motion for new trial. Upon our review, we affirm the termination of the mother's parental rights.

On appeal, we review the evidence in a light most favorable to the lower court's judgment and determine only whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. We defer to the juvenile court's factfinding and thus neither weigh the evidence nor evaluate witness credibility.

(Citation and punctuation omitted.) *In the Interest of J. K.*, 278 Ga. App. 564, 564-565 (629 SE2d 529) (2006).

On April 16, 2003, the Hall County Department of Family and Children Services (DFACS) received a report that the mother of then three-year-old J. M. N., one-year-old J. L. N., and five-month-old T. A. J. had been evicted and was unemployed, and the children had no food or diapers. The juvenile court issued a shelter care order, and following a detention hearing placed the children in DFACS custody. DFACS, subsequently, filed a deprivation petition, and the juvenile court held a hearing, after which it issued an order finding the children deprived. The court appointed special advocate (CASA) who was appointed as guardian ad litem for the children, issued two reports before the deprivation hearing. The reports reflected that the children were without "basic needs," and that the mother "left the children without food, supervision, left them without clothes in the winter, no medical attention, and this has been consistent over the past few years. The mother also left the children with a known child molester where the three year old was penetrated." The deprivation order was not appealed.[1]

A reunification case plan was submitted on May 27, 2003 which required that the mother maintain stable housing and employment, complete parenting classes, complete anger management classes, attend mental health counseling, ensure proper parental supervision, and that the children receive all medical treatment. The juvenile court incorporated the case plan into a June 3, 2003 order which was also not appealed.

In September 2003, a review panel found that the mother had not completed her parenting or anger management classes, and did not have stable housing. In December 2003, the juvenile court conducted a review hearing and issued an order finding that the mother had completed a parenting class but was unemployed, had not completed anger management counseling, was pregnant with her fourth child, and had not received mental health counseling. Custody was maintained with DFACS.

DFACS filed another deprivation petition in February 2004, and the CASA submitted a report that the mother had not complied with her case plan, her home was in disarray, the water was turned off for three months, and she did not interact with the children appropriately. The CASA noted that the mother needed "employment, adequate stable housing, parenting skills, and counseling for issues that happened to her as a child." The juvenile court again determined

---

[1] The trial court also found the children deprived as to the father in an order entered July 21, 2003.

that the children were deprived and that custody would remain with DFACS. The court approved concurrent reunification and adoption as the permanent plan. The order was not appealed.

A May 2004 review panel recommended reunification, noting that the mother had made some progress; however, DFACS and the CASA disagreed with the recommendation, and it was noted that DFACS was going to file for termination of parental rights. In June 2004, DFACS filed a petition to terminate the mother's parental rights.

At the termination hearing a DFACS parenting counselor who worked with the mother testified that, despite their work, the mother persisted in making bad decisions regarding budgeting. She believed that this would negatively impact the mother's parenting ability, and was aware that the mother was never consistently employed, and that the water had recently been cut off. The counselor also expressed concerns about whether the mother could parent the children on a full-time basis. The mother's landlord testified that the mother was presently $855 in arrears with her rent, had only paid the rent in full twice, and that he could not afford to evict the mother because of his high vacancy rate.

A psychologist who evaluated the mother testified that when the mother was initially tested in 2002, she was diagnosed with depression, anxiety, bipolar disorder, post-traumatic stress disorder, anger control problems, and low self-confidence and self-worth. The doctor testified that in 2002, the mother expressed to him that she had low tolerance for children, was afraid she might hurt them, and that she had been molested as a child. He noted improvements when the mother was evaluated in 2004. The psychologist testified that her depression, anxiety, anger control, assertiveness, and self-confidence had improved. However, he opined that placing the children back into the home could put a lot of pressure on the mother and trigger her own post-traumatic disorder traits. This was especially true given that the oldest child had significant issues with self-stimulation and masturbation. The doctor testified that in some instances, a trigger could cause "the parent [to] decompensate to the point of being trance-like for hours at a time because of the trigger mechanism from the child being in the home." He noted that although the mother's scores had improved, she still had compulsive and anxious traits, and that having young children in the home could put her at risk of becoming out of control. He also testified that the mother had not met her own mental health needs or basic necessities, and would likely not be able to meet the needs of her special needs children. He expressed concern that the mother had not been treated for her prior bipolar diagnosis.

J. M. N.'s foster parent testified that the child had severe psychological and medical issues including attention deficit hyperactivity disorder, depression, anxiety disorders, mood disorder, and sexually acting out behavior that required a strict medication regimen. She testified that J. M. N., who was five, required constant supervision and that she could not have other children in the home and properly care for the child. J. M. N. also has speech problems, motor skills problems, and learning delays which, along with her mental health issues, require that the child see a therapist, family consultant, psychiatrist, and pediatrician. The foster mother testified that J. M. N. had stabilized until her last visit with her mother and her condition had since deteriorated to where hospitalization was being considered.

J. L. N.'s foster mother testified that the child was receiving mental health, occupational and speech therapy, and was on medication for the mental health issues. The child, who was three, was initially withdrawn, threw temper tantrums, and had a limited vocabulary until J. M. N. was placed in another home. She also testified that after visits with the mother, J. L. N. would bite her nails, spit on walls, use regressive baby talk, and become angry. The child improved when the visits were decreased. T. A. J.'s foster parent testified that the child, who was two, did not talk, was underdeveloped and needed weekly speech and physical therapy. The guardian ad litem recommended that the mother's parental rights be terminated as it would represent the best interests of the children.

The juvenile court entered an order on January 31, 2005 terminating the mother's parental rights, and the mother timely filed a motion for new trial. The mother also filed a notice of appeal. Our court returned the record "until the Motion for New Trial has been concluded and a stamped filed copy of the order is included in the record." On September 28, 2005, the juvenile court held a hearing on the new trial motion, and denied it on October 28, 2005. The mother appealed the denial to this Court; however, the September hearing was apparently not recorded. DFACS filed a motion to remand because of the lack of transcript from the motion for new trial hearing, which this Court granted. The juvenile court conducted another hearing on the mother's motion, which it denied by order entered June 21, 2006. It is from this order that the mother appeals.

The termination of parental rights is a two-step procedure. OCGA § 15-11-94 (a). The juvenile court must find parental misconduct or inability, based on clear and convincing evidence that (i) the child is deprived, (ii) lack of parental care caused the deprivation, (iii) such causes are likely to continue, and (iv) the continued deprivation is likely to cause serious harm to the child. OCGA § 15-11-94 (b) (4) (A) (i)-(iv). See *In the Interest of D. L. S.*, 271 Ga. App. 311, 312-313 (609

SE2d 666) (2005). Next, if these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering her physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home. OCGA § 15-11-94 (a). *In the Interest of A. L. E.*, 248 Ga. App. 213, 216 (1) (546 SE2d 319) (2001).

1. The mother first contends that the juvenile court erred in finding the children deprived. However, she is bound by the juvenile court's prior deprivation orders, which were never appealed. *In the Interest of T. P.*, 270 Ga. App. 700, 704 (1) (608 SE2d 43) (2004).

2. The mother next contends that the court erred in finding that lack of proper parental care and control is the cause of the deprivation.

The mother's failure to obtain stable housing, continued financial instability, and prolonged unwillingness to address her mental health issues, show that the mother's lack of parental care or control caused the children's deprivation. Further, in cases in which the children are not in the custody of the parent who is the subject of the termination proceeding, the juvenile court is required to consider whether the parent, without justifiable cause, failed to comply with a court-ordered reunification plan. OCGA § 15-11-94 (b) (4) (C) (iii). Here, the evidence establishes that the mother unjustifiably failed to comply with her case plan goals.

3. The mother also contends that the trial court erred in finding that the cause of the children's deprivation is likely to continue. It is appropriate for a trial court to consider a parent's past conduct in determining whether the deprivation is likely to continue. *In the Interest of C. B. H.*, 262 Ga. App. 833, 836 (1) (586 SE2d 678) (2003). As noted above, the mother failed to comply with her case plan. Additionally, the mother failed to maintain stable housing or employment and had difficulty developing parenting skills. Moreover, there was testimony that the mother would have difficulty parenting her children who had special needs in light of her unresolved mental health issues.

Although the mother argues that she has made some efforts to comply with the reunification plan, the trial court "was authorized to assign less weight to assertions of sudden parental fitness based on belated efforts to comply with a case plan after termination proceedings begin." (Citation and punctuation omitted.) *In the Interest of J. S.*, 232 Ga. App. 876, 880 (1) (502 SE2d 788) (1998) (noting that a few months of partial stability does not establish that a parent is capable of maintaining the progress). "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) *In the Interest of T. B.*, 267 Ga. App. 484, 487 (1) (600 SE2d 432) (2004).

Ultimately, "the trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court." (Citation and punctuation omitted.) *In the Interest of G. B.*, 263 Ga. App. 577, 583 (1) (588 SE2d 779) (2003).

4. Moreover, more than clear and convincing evidence exists to support the finding that termination of the mother's rights was in the best interests of the children. The children are well cared for in stable foster homes and clearly need stable homes and close supervision. Educational and therapeutic services are being provided and medication is being administered and monitored if necessary. The times the mother visited her children appeared to cause great tumult for the children.

"Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citations and punctuation omitted.) *In the Interest of B. D.*, 236 Ga. App. 119, 121 (3) (511 SE2d 229) (1999).

Termination of the mother's parental rights was clearly in the best interests of the children.

5. The mother also contends that the trial court erred in denying her new trial motion; however, based on the foregoing, the trial court did not err in denying the mother's motion for new trial.

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED MAY 1, 2007.

*James T. Hallman*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Coleman & Chambers, John R. Coleman, Jr., Franklin B. Patterson*, for appellee.