63495. IN THE INTEREST OF T. R. G. et al.

BIRDSONG, Judge.

Termination of parental rights. This is a case involving a mildly mentally retarded mother also suffering from latent schizophrenia and an alcoholic, abusive father. The father voluntarily surrendered in writing his parental rights. The mother has not had custody of the two boys, aged 4 and 3, since 1979. Custody was removed at that time because the mother was admitted to Central State Hospital for treatment and the father was habitually drunk and abusive to the two infants. Custody was given to the paternal grandparents for foster care. The evidence indicated that prior to her commitment and treatment the mother was unable to give even minimal care for the maintenance and supervision of the children. She could not plan or

prepare meals adequate to their continued good health, did not keep them in appropriate diapers, and subjected the children to somewhat bizarre emotional outbursts such as swinging from moods of crying and hysteria to inappropriate laughter. The children showed under psychological testing that they were becoming retarded or slow in emotional and intellectual development. After being placed in foster care, each child became more mentally and emotionally alert and responsive to their environmental influences. When the mother was released from the hospital on one occasion and the children were returned to the home, each child experienced regression to a more flat emotional and intellectual state. From 1979 until 1981 the mother has been treated by medication and has undergone training by mental health agencies. She has shown much improvement and as of the time of the hearing was living with one other person in a supervised program and together the two were "making it." This was defined as being able to purchase their own groceries, hold a full-time job, and generally manage their own affairs. The mother was shown to have learned to tell time by a clock a few weeks before the hearing and could count, and sign her own name. However, all persons who testified, including the mother, agreed that she was not yet capable of taking care of her two children and no one could state unequivocally that she ever would be. It was also agreed by all who testified that the mother was under constant supervision and though she did not need daily care, she always had such care at her beck and call. Based upon this state of evidence, the trial court terminated the parental rights of both the mother and father. Only the mother brings this appeal enumerating as error a finding that the children were deprived and that such deprivation would likely continue. *Held:*

Code Ann. § 24A-3201 provides, in part: "The court by order may terminate the parental rights of a parent with respect to his child if: . . . (2) the child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental . . . or emotional harm. . . ." Code Ann. § 24A-401 (h) (1) defines a deprived child as one who: "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. . . ."

This case presents us with the unfortunate situation where a mother obviously loves her children, is not intentionally abusive toward them, and wants to retain the right to visit them and maintain contact as mother of her children. Thus, she has sought to prevent termination of her parental rights not for the purpose of obtaining care and custodial rights, but to retain the right to visit them. She

candidly admits that she is not capable of caring for them at the present time. In view of her substantial improvement in self-sufficiency, she argues that sometime in the future she may be able to care for her children. The evidence made clear, however, that the possibility that the mother will ever be able to care for her children is at best conjectural. Evidence was submitted that experience has shown children need permanence of home and emotional stability or they are likely to suffer serious emotional problems. Evidence available to the Department of Family and Children Services indicated that 18 months or more of foster care most often led to permanent foster home care rather than adoption, while on the other hand, three and four-year-old children are much more easily placed for adoption than children several years older.

The majority of cases in this state dealing with factual situations of this type have enunciated a rule that in termination cases the welfare of a child is of paramount importance provided there is also evidence that (as pertinent to this case) the parent suffers from some mental disability that renders the parent unable to care for the child (i.e., unfit). This case clearly fits that mold. There is no dispute that as of the time of the hearing and for the foreseeable future, the appellant mother is unable to furnish proper parental care and control necessary for the children's physical, mental and emotional health and that these conditions and causes of deprivation are likely to continue for the foreseeable future. In light of such evidence, the trial court did not err in terminating the parental rights of the appellant mother. *Chancey v. Dept. of Human Resources,* 156 Ga. App. 338, 339 (274 SE2d 728); *Ray v. Dept. of Human Resources,* 155 Ga. App. 81 (2) (270 SE2d 303).

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

Decided April 21, 1982.

Michael A. Sherling, for appellants.

Michael J. Bowers, Attorney General, Larkin M. Fowler, Jr., Carol Atha Cosgrove, Vivian Davidson Egan, Assistant Attorneys General, for appellee.