sought a continuance of the jury trial on the morning trial was to begin. The trial court denied the motion and held the trial, and the jury returned a verdict in appellee's favor. Appellant's sole enumeration of error is the denial of his motion for continuance. We affirm.

A resident of Tampa, Florida, appellant sought the continuance because he was ill and unable to travel to Augusta, Georgia, where the trial was to take place. According to a letter from his doctor introduced by appellant's counsel at the hearing, appellant was being treated for a severe sinus infection which caused dizziness, and the medication he was taking caused drowsiness. The letter did not state when appellant would be able to travel. Appellee's counsel opposed the motion, stating that his client had traveled by public transportation from Las Vegas, Nevada, for the trial and that he had taken appellant's deposition and would cooperate with appellant's counsel in reading it into evidence.

The cases from the first quarter of this century cited by appellant require counsel for the party moving for continuance to state in his place that he cannot safely go to trial without the presence of his client. That requirement still stands today. OCGA § 9-10-154. Our review of the record reveals that appellant's counsel failed to make the required statement, and that he also failed to show that appellant's condition "was expected to improve so as to enable him to be present at a future trial of the case. [Cit.]" *Allen v. Brookshire*, 169 Ga. App. 391 (1) (312 SEd 862) (1984). Under those circumstances the trial court did not abuse its discretion by denying the motion for continuance.

*Judgment affirmed. Banke, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 1, 1985.

*Victor C. Hawk, Jacque D. Hawk*, for appellant.
*J. Richard Dunstan*, for appellee.

70967. IN RE S. R. J.
(337 SE2d 444)

BIRDSONG, Presiding Judge.

Termination of Parental Rights. This case revolves around a single issue: Is mental inability the equal of unfitness? The facts show that the mother is mentally retarded and has demonstrated an inability to comprehend or retain more than the simplest of parenting skills in spite of prolonged training. There is evidence that the mother has never harmed the child other than by possible neglect through forget-

fulness or inability to take a more appropriate course of action in the daily care of the child. The mother can perform routine, uncomplicated household chores, cook simple meals but needs the constant supervision and help of her own mother, with whom she and the infant reside. The state showed without significant dispute that without the constant supervision and help of the child's grandmother, the mother cannot function in a manner sufficient to raise a child. It was the opinion of the case worker and a psychologist that the mother might forget to send the child to school, to recognize and to react to illness or to make even minimal plans for the successful rearing of a child. It is not contested that so long as the grandmother is present to direct and assist in the rearing of the child, the necessary parenting skills will be present in the home. Thus, the more refined issue is whether a juvenile court can terminate a parent's right to rear and control a natural born child where the parent is mentally incapable of rearing a child but who, with ever present and capable help, can keep custody and control of a child even though ultimate responsibility is placed upon someone other than the parent.

The issue in this case has been resolved adversely to the mother's contention. In the case of *In the Interest of T.R.G.*, 162 Ga. App. 177, 179 (290 SE2d 523), we held: "The majority of cases in this state dealing with factual situations of this type have enunciated a rule that in termination cases the welfare of a child is of paramount importance provided there is also evidence that (as pertinent to this case) the parent suffers from some mental disability that renders the parent unable to care for the child (i.e., unfit). This case clearly fits that mold. There is no dispute that as of the time of the hearing and for the foreseeable future, the appellant mother is unable to furnish proper parental care and control necessary for the [child's] physical, mental and emotional health and that these conditions and causes of deprivation are likely to continue for the foreseeable future." Of similar import is the case of *Chancey v. Dept. of Human Resources*, 156 Ga. App. 338, 340 (274 SE2d 728). In the instant case, the inquiry at the deprivation hearing was not whether the parent, for her misconduct, deserved to have her parental rights terminated. The question was whether the child was without proper parental care or control, subsistence, education as required by law. The evidence is uncontested that the mother, standing alone, cannot fulfill those responsibilities.

This case is not dependent upon the parenting skills of the grandmother who has no parental rights in the child, but upon the parental rights of the natural mother. The test must be whether the parent, ultimately standing alone, is capable of mastering and can effectively demonstrate the ability to utilize those parenting skills. That is the sole issue for determination. The facts disclose she alone can-

not. We can find no abuse of discretion on the part of the juvenile court and determine that there is ample evidence to support the decision to terminate the mother's parental rights in this case.

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED NOVEMBER 1, 1985.

*Floyd H. Farless*, for appellant.
*James P. Orr*, for appellee.

70548, 70549. TWYMAN v. ROBINSON (two cases).
(337 SE2d 375)

BANKE, Chief Judge.

R. L. Twyman and Lucille Twyman filed separate suits against Rickie Bernard Robinson to recover for injuries they allegedly sustained when an automobile being driven by R. L. Twyman and occupied by Lucille Twyman as a passenger collided with a car being driven by Robinson. At the time of the collision, R. L. Twyman was a member of Atlanta Car For Hire Association, Inc. As such, he paid the Association a monthly fee of $100, in part for the purpose of securing insurance coverage on the vehicle in which he and Lucille were riding at the time of the collision. Atlanta Car For Hire Association, Inc., is registered with the Georgia Insurance Commissioner's Office as an approved self-insurer and has been issued a "self-insurance certificate" by the Department of Public Safety. It is asserted by Mr. Twyman in his brief that he was issued a card by the Association certifying that the vehicle was insured.

Believing the defendant, Mr. Robinson, to be an uninsured motorist and Atlanta Car For Hire Association, Inc., to be liable for uninsured motorist benefits under the self-insurance arrangement, the plaintiffs caused copies of their complaints to be served on the Association. These appeals are from orders granting summary judgment to the Association in each case, based on the court's conclusion that self-insurers are not required by law to provide uninsured motorist benefits. *Held*:

The term "self-insurer" is defined by OCGA § 33-34-2 (12) to mean "any owner who has on file with the Commissioner of Public Safety an approved plan of self-insurance which provides for coverages, benefits, and efficient claims handling procedures substantially equivalent to those afforded by a policy of automobile liability insurance that complies with all of the requirements *of this chapter*." (Emphasis supplied.) See also OCGA § 40-9-101 (a). The statutory