A06A1129. IN THE INTEREST OF H. F. G., a child.
(635 SE2d 338)

MIKELL, Judge.

Appellant mother appeals the termination of her parental rights to five-year-old H. F. G. She claims there was insufficient evidence to support the termination and also claims that it was error to terminate

[5] *Marquis Tower v. Highland Group*, 265 Ga. App. 343, 347 (2) (593 SE2d 903) (2004).
[6] *Carter v. Moody*, 236 Ga. App. 262, 264 (511 SE2d 520) (1999).

her rights to the child in the absence of a reunification plan which complied with OCGA § 15-11-58. For the reasons set forth below, we affirm.

On appeal from a termination order, we view the evidence in the light most favorable to the appellee and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.[1] "We do not weigh the evidence or determine the credibility of the witnesses but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review."[2]

So viewed, the evidence shows that the Mitchell County Department of Family and Children Services ("DFCS") filed a deprivation complaint on April 9, 2002, and a deprivation petition on April 16, 2002, alleging that appellant, who was 14 at the time of H. F. G.'s birth and mildly retarded, had missed medical appointments for H. F. G. and had left him in the care of his maternal grandmother who was mentally and emotionally unstable. During an adjudicatory hearing on April 23, 2002, appellant stipulated to a finding that H. F. G. was deprived. In a subsequent order, the juvenile court adjudicated H. F. G. deprived, but allowed appellant to retain custody of him under DFCS supervision and on the condition that while in school, she leave the child with an appropriate daycare provider other than her mother. On April 29, 2002, appellant left H. F. G. with her mother. On that same date, DFCS obtained emergency custody of the child. Following an adjudicatory hearing where appellant admitted violating the court's previous order, the court found H. F. G. deprived and awarded DFCS temporary legal custody. The juvenile court's orders were never appealed.

In May 2002, DFCS established a reunification plan which required appellant to enroll in school and attend everyday unless ill; apply herself academically in order to receive a diploma; attend mental health treatments and follow any and all recommendations; attend parenting classes; keep DFCS informed of her current address and telephone number; and maintain her income.[3] The plan was renewed on October 28, 2002, and the juvenile court issued an order incorporating that plan on November 18, 2002. Following a hearing on April 22, 2003, the court entered an order on May 15, 2003, incorporating a renewed reunification plan which contained additional goals requiring that appellant obtain and maintain stable,

---

[1] *In the Interest of J. S. T. S.*, 273 Ga. App. 221, 222 (614 SE2d 863) (2005).

[2] (Punctuation and footnote omitted.) *In the Interest of S. R. B.*, 273 Ga. App. 39 (614 SE2d 150) (2005).

[3] Appellant received $565 per month in Social Security Income (SSI) benefits.

clean, safe, and sufficiently spacious housing, and cooperate with a parenting aide. In a subsequent order, dated June 24, 2003, the juvenile court granted DFCS's motion for extension of custody, finding that appellant continued to leave H. F. G. with inappropriate care givers and was incarcerated at the Macon Regional Youth Development Center for being an unruly child. That order was not appealed. On February 19, 2004, and March 4, 2004, respectively, DFCS filed a new deprivation complaint and a new deprivation petition. Following a hearing on March 23, 2004, the juvenile court entered an order adjudicating H. F. G. deprived and extending DFCS's custody. In that order, the juvenile court reiterated its findings of June 24, 2003, and further found that appellant and H. F. G.'s putative father, C. W., failed to complete their case plan goals; that appellant had not attended school diligently; that appellant did not cooperate with transportation for visitation; that appellant could not support herself or H. F. G.; and that C. W. had not legitimated the child or attempted to visit him. That order was not appealed.

On April 9, 2004, DFCS filed a petition to terminate the parental rights of appellant and C. W., asserting that appellant had failed to comply with the goals of her case plan and that C. W. had failed to legitimate the child. Before a hearing was held on the petition, the court entered an order on June 4, 2004, incorporating a fourth renewed reunification plan which contained additional goals requiring that appellant obtain childcare services or assure H. F. G.'s proper supervision, prove to DFCS that she can be a fit parent, and visit the child as scheduled. A termination hearing was held on June 11, 2004, at which time the juvenile court ordered that C. W.'s parental rights be terminated on the ground that he had taken no steps to legitimate the child, and that the hearing as to appellant be continued to subpoena additional witnesses. In October 2004, DFCS renewed a fifth reunification plan, requiring appellant to submit to random drug screens and comply with child support enforcement recommendations.

The hearing on DFCS's petition to terminate appellant's parental rights was rescheduled for May 24, 2005, at which time psychologist Connie Schenk testified that she performed a psychological evaluation of appellant on March 26, 2003. Schenk concluded that appellant is mildly retarded with a Full Scale IQ of 57; that she performs at a second-grade level; that she has inappropriate expectations of a child; that she lacks the ability to empathize; and that she has a strong belief in corporal punishment. Schenk expressed concern about appellant's parenting skills, opining that she would need around-the-clock assistance, "[o]n-site supervision; someone there to assist her because of [her] intellectual and parenting deficits." Schenk noted that appellant's mother and brother were equally impaired,

and therefore could not assist appellant in parenting H. F. G. Schenk found it unlikely that appellant could obtain a GED.

Sheneka Riggins, a social services case manager with DFCS, testified that appellant had satisfied all case plan goals except completing high school or obtaining a Special Education Certificate or GED. Riggins explained that appellant could lose her SSI benefits if she did not attend school. Since H. F. G. had not lived in appellant's home for two years, Riggins could not say whether appellant was a fit parent, however, she explained that in order to prove she is a fit parent, appellant must "prevent the problems that basically brought the child into foster care. Meaning that . . . she would stay home with the child, not leave the child with mom. Basically, just provide the basic needs of the child." Riggins did not recommend returning H. F. G. to his mother because of her "mental abilities" and lack of familial support. According to Riggins, H. F. G. has lived in the same foster home for three years, and his foster parents want to adopt him. He has serious anger problems and is developmentally delayed. Riggins was not aware of any individuals or services capable of providing 24-hour parenting assistance to appellant. According to Riggins, even if appellant had completed all case plan goals, she would not recommend reunification because of the "mental ability" of appellant's family.

Appellant testified that her friend, Nichol Kelson, a mother herself, or appellant's boyfriend could help appellant with H. F. G. She expressed a desire to raise her child, stating that, "I want to see and raise my child like a parent is supposed to. I want to be in my child's life." Appellant did not get her GED because she is "not a fast learner." Appellant did not recall DFCS or the court telling her that she could not leave H. F. G. with her mother.

At the close of the hearing, the child's guardian ad litem recommended that termination of appellant's parental rights is "probably what is in the best interest of the child, because the child has been in [f]oster [c]are for three years." But, the guardian ad litem went on to clarify his recommendation as follows:

> However, I have grave reservations about doing it based on the type of Case Plan and because of the unique issues involved in this case. Because it seems like the whole decision is based on her not having that support network; yet, it's not in the Case Plan. And so, I do have a problem with it legally . . . [because] the truth of the matter is even if she completed the Case Plan, the educational part, [DFCS's] recommendation would still be not to return the child.

The juvenile court terminated appellant's parental rights to H. F. G., finding that appellant cannot raise the child by herself and that despite appellant's testimony, nobody testified that he or she is willing to help her. The court concluded that the child is without proper parental care and control and that the causes of the deprivation were likely to continue. According to the court, "the child is being harmed by this day in, and day out and not having the permanency that [he] needs."

OCGA § 15-11-94 (a) sets out a two-part procedure for termination cases. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability, as defined in subsection (b) of the statute. Parental misconduct is found when: (1) the child is deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.[4] Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, "[it] shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child . . . , including the need for a secure and stable home."[5]

1. In two related enumerations of error, appellant disputes the trial court's findings as to the third and fourth factors. Specifically, appellant contends that the evidence does not clearly and convincingly show that the cause of the deprivation is likely to continue because appellant's boyfriend and Kelson are willing and able to assist her in raising H. F. G., and there is no evidence of any specific harm to the child.

Although appellant has completed most of her case plan goals and wishes to be part of her child's life, the evidence shows that she lacks the mental capacity to care for H. F. G. without around-the-clock assistance from others, something DFCS is not obligated to provide.[6] Appellant argues that her boyfriend and Kelson are willing and able to help her, however, as we have indicated previously, "[t]he test must be whether the parent, ultimately standing alone, is capable of mastering and can effectively demonstrate the ability to utilize . . . parenting skills."[7]

---

[4] OCGA § 15-11-94 (b) (4) (A) (i)-(iv).

[5] OCGA § 15-11-94 (a).

[6] See *In the Interest of J. W.*, 271 Ga. App. 518, 520 (610 SE2d 144) (2005).

[7] *In the Interest of S. R. J.*, 176 Ga. App. 685, 686 (337 SE2d 444) (1985).

The majority of cases in this state dealing with factual situations of this type have enunciated a rule that in termination cases the welfare of a child is of paramount importance provided there is also evidence that . . . the parent suffers from some mental disability that renders the parent unable to care for the child. . . . This case clearly fits that mold. There is no dispute that as of the time of the hearing and for the foreseeable future, the appellant mother is unable to furnish proper parental care and control necessary for the child's physical, mental and emotional health and that these conditions and causes of deprivation are likely to continue for the foreseeable future.[8]

As the uncontested evidence shows that appellant cannot independently fulfill her parenting responsibilities, we reach the same conclusion.

Additionally, contrary to appellant's contention, there is evidence of specific harm. Riggins testified that H. F. G. has been in foster care for three years, that he has serious anger problems, and that he is developmentally delayed. Although there is no evidence that H. F. G. has ever been harmed while in appellant's care, "the trial court is not obligated to return the [child] and wait until the [child] *actually* [has] been harmed before terminating the parent's rights."[9]

Given appellant's mental capacity, her inability to care for H. F. G. by herself, and the fact that the child's foster parents wish to adopt him, the juvenile court did not abuse its discretion in finding that termination of appellant's parental rights serves the best interests of the child.[10]

2. Relying on *In the Interest of B. C.*,[11] appellant contends that it was error to terminate her rights to H. F. G. in the absence of a reunification plan which complied with OCGA § 15-11-58 (c) (3). That Code section provides as follows:

---

[8] (Punctuation omitted.) Id., citing *In the Interest of T. R. G.*, 162 Ga. App. 177, 179 (290 SE2d 523) (1982). See also *In the Interest of A. S. H.*, 239 Ga. App. 565, 570 (1) (521 SE2d 604) (1999).

[9] (Citations omitted; emphasis in original.) *In the Interest of A. S. H.*, supra at 571 (1).

[10] See, e.g., *In the Interest of K. N.*, 272 Ga. App. 45, 52-53 (611 SE2d 713) (2005). Compare *In the Interest of J. S. B.*, 277 Ga. App. 660, 663-664 (2) (d) (627 SE2d 402) (2006) (insufficient evidence to support the juvenile court's conclusion that continued deprivation is likely to cause serious harm to the children: "[t]he mother's inability to care for her children does not necessarily mean that her current relationship with them is detrimental") (citation, punctuation and footnote omitted); *In the Interest of J. H.*, 258 Ga. App. 211, 216 (573 SE2d 481) (2002) (same); *In the Interest of D. F.*, 251 Ga. App. 859, 861-862 (555 SE2d 225) (2001) (same).

[11] 250 Ga. App. 152 (550 SE2d 707) (2001).

If the report contains a plan for reunification services, such plan if adopted by the court shall be in effect until modification by the court. The plan shall address each reason requiring removal and shall contain at least the following: . . . (3) A clear description of the specific actions to be taken by the parents and the specific services to be provided by the Division of Family and Children Services of the Department of Human Resources or other appropriate agencies in order to bring about the identified changes that must be made in order for the child to be safely returned home; provided, however, that all services and actions required of the parents which are not directly related to the circumstances necessitating separation cannot be made conditions of the return of the child without further court review.[12]

Appellant argues that the case plan goals did not address the reason behind H. F. G.'s removal from her custody, i.e., that she needed a competent adult to assist her in rearing the child. We reject this contention for several reasons. First, this case is distinguishable from *In the Interest of B. C.*,[13] where no reunification plan was ever put in place.[14] Second, the record reflects that appellant's case plans required her to prove that she can be a fit parent, including assuring H. F. G.'s proper supervision. Lastly, given our holding in Division 1, that appellant is incapable of mastering the skills necessary to care for H. F. G., the trial court did not err in terminating appellant's parental rights.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED AUGUST 9, 2006.

*Robert C. Richardson, Jr.,* for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Clark & Bellamy, Brian D. Bellamy,* for appellee.

---

[12] OCGA § 15-11-58 (c) (3).
[13] Supra.
[14] Id. at 155-156 (1).