678 S.E.2d 343 (2009)
In the Interest of K. C. W., a child.
No. A09A0943.
Court of Appeals of Georgia.
May 6, 2009.
*344 Jessica D. Huff, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Kathryn A. Fox, Asst. Atty. Gen., Hennicutt & Taylor, James T. Hunnicutt, Newnan, for appellee.
BERNES, Judge.
The juvenile court found that the father of K. C. W. suffered from a mental deficiency rendering him incapable of caring for the child on his own and terminated his parental rights. The father appeals, contending that the juvenile court relied upon an improper ground for granting the termination and challenging the sufficiency of the evidence in several respects.[1] For the reasons discussed below, we are constrained to affirm.
In considering the [father]'s appeal, we view the evidence in the light most favorable to the juvenile court's disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the [father]'s right to custody should have been terminated. We neither weigh the evidence nor determine the credibility of any witnesses, but instead defer to the juvenile court's findings of fact.
In the Interest of K. N., 272 Ga.App. 45, 611 S.E.2d 713 (2005).
So viewed, the record showed that the father was the biological father of the male child K. C. W., although he was never married to the mother. In 2005, when K. C. W. was six years old, the father suffered a stroke that affected his mental functioning. In December of that year, K. C. W. was placed in the emergency custody of the Troup County Department of Family and Children Services ("DFCS") when neither parent could be located after the child returned home from school.
The juvenile court thereafter entered an order finding the child deprived and awarding temporary custody of him to DFCS. The court found, among other things, that the father had failed to properly supervise the child. A subsequent deprivation order clarified that the failure to properly supervise was "due possibly to mental health issues." The father did not appeal the deprivation orders.
DFCS developed a reunification case plan for the father that required him, among other things, to complete a psychological evaluation and follow all provider recommendations; to attend and successfully complete parenting classes and counseling sessions; and to obtain and maintain housing adequate for himself and his child. The juvenile court entered a supplemental order incorporating the terms of the case plan and a separate *345 order requiring the father to pay $131 per month in child support.
The father thereafter filed a petition to legitimate his child, which the juvenile court granted. It is undisputed that over the ensuing months, the father worked hard to complete his reunification case plan goals and paid child support. However, the father also received several psychological evaluations during this period that reflected negatively on his mental capacity to parent his child. Ultimately, in March 2008, DFCS filed a petition to terminate the father's parental rights alleging that he had failed to complete his reunification case plan.
At the termination hearing, Dr. Jimmy McCamey, a clinical psychologist and counselor, was admitted as an expert in those fields and testified concerning his evaluation of the father. Dr. McCamey testified that he performed a psychological evaluation of the father on April 8, 2006 and follow-up evaluations on June 23, 2008 and June 25, 2008. He related that the purpose of his evaluations was "to assess [the father's] intellectual and emotional functioning as well as how his mental and cognitive ability impact[ed] his ability to parent his child." Based on his evaluations and testing of the father, Dr. McCamey reported that the father had a full scale I.Q. of 66 and was "extremely low-functioning" intellectually. According to Dr. McCamey, a person in that range of intellectual functioning has "cognitive limitations that would prohibit him from making informed decisions in regards to everyday parenting matters." He further opined that "cognitively [the father] would not be able to, on his own, ... parent an eight-year-old child" and would need a guardian to assist him who "would have legal control and say-so over the child." Additionally, Dr. McCamey testified that the father's cognitive ability had not improved in his follow-up evaluations and was not something that could be significantly improved over time.
In turn, the DFCS case manager for K. C. W. testified that the father had completed all of his reunification case plan goals, except for obtaining suitable housing, although she conceded that the father had recently purchased a new home that had not yet been evaluated by DFCS. The case manager further testified that K. C. W. was now eight years old, had been in DFCS custody for thirty-one months, and currently was placed with foster parents who wanted to adopt him.
The foster mother of K. C. W. also testified at the hearing. She noted that the child had asthma with recurring attacks at least once a month and that he used inhalers and a nebulizer machine. She also noted that the child had spent two years in the first grade and had been in a special student assistance program because of his educational problems. Finally, the foster mother testified that she and her husband wanted to adopt K. C. W. but would allow the child to maintain contact with his father after the adoption.
The father took the stand and testified that he wanted to raise K. C. W. himself, but he did not come forward with any specific plan as to how he would obtain the assistance he would need to parent the child on his own. The father also testified that he would not agree to long term assistance from a guardian because he "wouldn't want nobody looking over [his] shoulder" for longer than six months to a year.
Lastly, the counselor who had conducted therapy sessions with the father over the past 18 months testified on behalf of the father. The counselor stated that she had been to the home purchased by the father, and she opined that it was suitable for an eight-year-old child to live in. The counselor further testified that she had not observed anything during her therapy sessions reflecting that the father would be incapable of raising K. C. W. She later admitted on cross-examination, however, that she was "not surprised" that psychological testing reflected that the father had low cognitive functioning and conceded that the father would need assistance in parenting.
After hearing the testimony and admitting several of its prior orders into evidence, the juvenile court found that while the evidence showed that the father had completed his reunification case plan and clearly loved K. C. W., it also showed that he suffered from a mental disability rendering him incapable of parenting the child on his own. The juvenile *346 court noted that the finding was based in part on the court's observation of the father's demeanor and "his struggles on the stand." Accordingly, the juvenile court granted the termination petition and authorized DFCS to seek adoption for the child. Upon entry of the juvenile court's order, the father filed an application for discretionary appeal.[2] We granted the application, and this appeal followed.
1. Although unclear from his brief, the father appears to argue that the juvenile court's termination of his parental rights on the ground of mental deficiency was improper because the termination petition alleged only that he had failed to complete his reunification case plan. We are unpersuaded.
The father clearly was aware prior to the termination hearing that his mental capacity would be an issue with respect to his ability to supervise and care for K. C. W. During the 31 months the child was in DFCS custody, DFCS had the father submit to psychological evaluations on three separate occasions where his cognitive abilities were tested. Furthermore, the second deprivation order entered in the case specifically referenced the fact that the father's failure to properly supervise the child was "due possibly to mental health issues." Nor did the father object at the termination hearing to the introduction of evidence concerning his mental capacity. Indeed, the father presented rebuttal expert testimony from his own counselor at the hearing, which plainly showed that he foresaw his mental capacity would be a central issue in the case. Under these circumstances, the father cannot claim unfair surprise, and the juvenile court did not err in considering and relying upon evidence of the father's mental deficiency. See In the Interest of M.E.S., 263 Ga.App. 132, 137(1), 587 S.E.2d 282 (2003); In the Interest of J.W.H., 245 Ga. App. 468, 474-475(7), 538 S.E.2d 112 (2000).
2. The father challenges the sufficiency of the evidence supporting the termination of his parental rights.
The Georgia Code sets forth a two-step process to be used in termination of parental rights cases. First, the [juvenile] court determines "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-94(a). Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-94(b)(4)(A)(i)-(iv). If the [juvenile] court finds that these four factors exist, then the court determines whether termination of parental rights is in the best interest of the child, "after considering the physical, mental, emotional, and moral condition and needs of the child, ... including the need for a secure and stable home." OCGA § 15-11-94(a).
In the Interest of C.M., 275 Ga.App. 719, 720, 621 S.E.2d 815 (2005). Significantly, in reviewing the juvenile court's determinations on these issues, we defer to that court's factfinding, weighing of the evidence, and credibility assessments. See In the Interest of K.N., 272 Ga.App. at 45, 611 S.E.2d 713; In the Interest of J.L.G., 191 Ga.App. 904, 905(1), 383 S.E.2d 376 (1989). Mindful of these principles, we turn to the father's argument, which is that the juvenile court erred in finding clear and convincing evidence that the child was deprived, that the deprivation was likely to continue, and that termination of his parental rights was in the child's best interest. We discern no error by the juvenile court.
(a) The Child Must Be Deprived. The father did not appeal the juvenile court's orders finding K. C. W. deprived due to the father's failure to properly supervise the child. Moreover, as explained below, DFCS has demonstrated that the conditions upon which this finding was based still existed at the time of the termination hearing. Thus, *347 the father's failure to appeal the deprivation orders precludes him from challenging the juvenile court's finding of deprivation. See In the Interest of R.N.H., 286 Ga.App. 737, 740(1)(a), 650 S.E.2d 397 (2007); In the Interest of T.P., 270 Ga.App. 700, 704(1), 608 S.E.2d 43 (2004).
(b) Cause of the Deprivation Must Be Likely To Continue. Clear and convincing evidence supported the juvenile court's finding that the deprivation was likely to continue and would not be remedied. Although the father completed his reunification case plan goals, paid child support, and clearly desired to be part of his child's life, the state presented evidence that the father suffered from a mental deficiency rendering him unable to properly supervise and care for K. C. W. despite his best efforts. The fact that a parent has completed most or all of his case plan does not mandate that the child be returned to the parent's custody. See In the Interest of Q.H., 291 Ga.App. 598, 601(1), 662 S.E.2d 358 (2008); In the Interest of H.F.G., 281 Ga.App. 22, 26(1), 635 S.E.2d 338 (2006). Rather, in and of itself, "[a] mental disability that renders a parent incapable of caring for the child is a valid legal basis for termination." (Citations omitted.) In the Interest of B.J.H., 194 Ga.App. 282, 283(2), 390 S.E.2d 427 (1990). See OCGA § 15-11-94(b)(4)(B)(i);[3]In the Interest of H.F.G., 281 Ga.App. at 26-27(1), 635 S.E.2d 338; In re S.R.J., 176 Ga.App. 685, 686-687, 337 S.E.2d 444 (1985). In this regard, the test is "not whether the parent, for [his] misconduct, deserved to have [his] parental rights terminated," but whether the child was and will continue to be without proper parental care or control due to the parent's mental incapacity. In re S.R.J., 176 Ga.App. at 686, 337 S.E.2d 444. That test was met here.
As previously noted, Dr. McCamey provided expert testimony that the father was "extremely low-functioning" intellectually and lacked the overall cognitive ability to care for a minor child on his own and would need another person to help him parent effectively. Dr. McCamey further advised that the father would need a guardian to have "legal control and say-so over [K. C. W.]." And Dr. McCamey opined that the father's mental deficiency had not improved from when he first evaluated the father and was not something that could be significantly improved over time.
This expert testimony was sufficient to support the juvenile court's finding that the father suffered from a mental deficiency that rendered him incapable of caring for K. C. W., a child with special education needs and a chronic medical condition, at the time of the termination hearing and for the foreseeable future. Moreover, the juvenile court's finding was buttressed by the court's own observations of the father's testimony and demeanor at the termination hearing. See In the Interest of A.L.E., 248 Ga.App. 213, 217(1), 546 S.E.2d 319 (2001) (mental deficiency shown in part by the mother's "own disjointed testimony" and "difficulty focusing on her attorney's questions during direct examination"). Accordingly, while we are sympathetic to the father's tragic circumstances resulting from no fault of his own, we must conclude that any rational trier of fact could have found by clear and convincing evidence that the deprivation was likely to continue and not be remedied. See In the Interest of H.F.G., 281 Ga.App. at 26-27(1), 635 S.E.2d 338; In the Interest of A.S.H., 239 Ga.App. 565, 569-570(1), 521 S.E.2d 604 (1999); In the Interest of S.R.J., 176 Ga.App. at 686, 337 S.E.2d 444. Compare In the Interest of C.G., 235 Ga.App. 23, 24-25, 508 S.E.2d 246 (1998) (grant of termination petition reversed where the state failed to present any medical or psychological testimony concerning the nature or expected duration of the parent's alleged mental disability).[4]
*348 (c) Termination Must Be in the Child's Best Interest. "Given [the father's] mental capacity, [his] inability to care for [K. C. W.] by [himself], and the fact that the child's foster parents wish to adopt him, the juvenile court did not abuse its discretion in finding that termination of [the father's] parental rights serves the best interests of the child." (Footnote omitted.) In the Interest of H.F.G., 281 Ga.App. at 27(1), 635 S.E.2d 338. Furthermore, at the time of the termination hearing, the child had been in DFCS custody for 31 months, and "it is well established that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." In the Interest of B.I.F., 264 Ga.App. 777, 781(1), 592 S.E.2d 441 (2003). The juvenile court therefore committed no error in finding that termination would be in K. C. W.'s best interest.
Judgment affirmed.
SMITH, P.J., and PHIPPS, J., concur.
NOTES
[1] The juvenile court also terminated the parental rights of the mother. We separately address her appeal in In the Interest of K. C. W., 297 Ga.App. 773 ___ S.E.2d ___ (2009).
[2] An application for discretionary appeal is required in cases where the petition to terminate parental rights was filed on or after January 1, 2008. See OCGA § 5-6-35(a)(12); Ga. L. 2007, p. 554, §§ 3, 8. See also In the Interest of K.R., 285 Ga. 155, 674 S.E.2d 288 (2009).
[3] OCGA § 15-11-94(b)(4)(B)(i) provides:

In determining whether the child is without proper parental care and control, the court shall consider, without being limited to, the following: (i) A medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child....
[4] Although other conflicting testimony elicited at the termination hearing arguably would have supported a finding that the father did not suffer from a mental deficiency rendering him incapable of parenting the child, "it is the role of the juvenile court, not this Court, to weigh the evidence" and resolve conflicts therein. In the Interest of J.B., 274 Ga.App. 564, 568, 618 S.E.2d 187 (2005). See also In the Interest of S.D.H., 287 Ga.App. 684, 687-688, 652 S.E.2d 570 (2007).