**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 3, 2018**

# In the Court of Appeals of Georgia

A18A0862. IN THE INTEREST OF C. A. B. et al., children.

MILLER, Presiding Judge.

Linda Baker, the mother of children C. A. B., D. M. B., and H. U. B., appeals from the juvenile court's order terminating her parental rights to all three children. On appeal, she contends that the juvenile court lacked clear and convincing evidence to support the termination of her parental rights because she had substantially complied with most of her case plan goals and was set to be released from incarceration. After a thorough review of the record, we conclude that there is clear and convincing evidence to support the juvenile court's order finding that Baker subjected the children to aggravated circumstances and that it was in the children's best interest to be permanently removed from her custody. Accordingly, we affirm.

On appeal from a juvenile court's decision to terminate parental rights, we view the evidence in the light most favorable to the juvenile court's ruling and determine whether any rational trier of fact could have found by clear and convincing evidence that the parent's rights should be terminated. *In the Interest of C. S.*, 319 Ga. App. 138, 139 (735 SE2d 140) (2012). Nonetheless,

> this deferential standard of review is tempered by the fact that there is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously. The right to raise one's children is a fiercely guarded right in our society and law, and a right that should be infringed upon only under the most compelling circumstances.

(Footnote omitted.) *In the Interest of E. G. L. B.*, 342 Ga. App. 839, 840 (805 SE2d 285) (2017).

So viewed, the evidence shows that Baker has four children: son De. B., born in 2007, and daughters C. A. B., born in 2008, D. M. B., born in 2012, and H. U. B., born in 2015.[1] Baker lost custody of De. B. in 2014 after she physically abused him

---

[1] C. A. B.'s father surrendered his parental rights. The juvenile court also terminated the father's parental rights with respect to D. M. B.'s father and H. U. B.'s father. The fathers have not appealed the termination of their rights.

because she believed he was stealing money from her. She was charged with child cruelty in connection with this abuse and received a probated sentence. De. B. was removed from Baker's care, but the other children were not.

C. A. B. had witnessed her mother strike her brother on the head with a stick and, after De. B. was removed from Baker's custody, Baker began physically abusing C. A. B. Specifically, Baker used a stick or other object to strike C. A. B.; Baker hit C. A. B. if she did not complete her chores quickly enough or properly; Baker pushed her into the furniture and busted her lip; and Baker had burned her with hot water in the bathtub. When C. A. B. was interviewed in connection with the removal petition, she had a facial wound and bruises on her body, including a busted lip and a loose tooth.

In 2015, Baker left seven-year-old C. A. B. home alone for an hour while she took the other two children to the doctor. During that time, C. A. B. was sexually assaulted by an unknown attacker. When questioned about this incident, Baker first stated that C. A. B. was not at home when Baker woke up that morning and that when C. A. B. returned to the home, she was "bleeding between her legs" and stated that she had "been with a boy." Baker later changed her story and admitted that she had asked her brother to stay with C. A. B. while she took the other children to the doctor,

but that she left the house before her brother arrived. This was not the first time Baker had left C. A. B. home alone. Baker was arrested, jailed, and charged with child cruelty.

The Division of Family and Children Services ("DFCS") filed a petition for temporary custody of C. A. B., D. M. B., and H. U. B., noting that Baker was currently incarcerated on charges of child cruelty related to C. A. B. The children were removed from the home, taken into DFCS custody, and placed with their aunt and uncle. When the children were removed, H. U. B. was three months old, and D. M. B. was three years old.

The juvenile court found the children to be dependent, and Baker did not appeal from this decision.[2] DFCS prepared a case plan, which required Baker to settle her legal issues, obtain stable housing and income, and undergo assessments for parental fitness, mental health, and substance abuse, and complete any recommendations from those assessments.

In January 2016, Baker pleaded guilty to child cruelty in the second degree, and she was sentenced to ten years, with two to serve. Although DFCS initially planned

---

[2] Baker is bound by the juvenile court's dependency order because she did not appeal it. See *In the Interest of J. S. G.*, 242 Ga. App. 387, 388 (1) (529 SE2d 141) (2000).

on Baker's reunification with her children, it later recommended non-reunification due to Baker's incarceration and the length of time the children were in DFCS custody. In October 2016, DFCS filed its original petition to terminate Baker's parental rights. In April 2017, DFCS amended the petition, citing as grounds for termination that Baker had not complied with the case plan and was currently imprisoned.

At a hearing, Baker testified that she was currently incarcerated on child cruelty charges, and she admitted that she had physically abused De. B. and left C. A. B. at home alone. Baker explained that she had never applied for or had a job, and that she received social security benefits due to "slow brain waves inside [her] head." She stated that she planned to live with her mother after her release from jail until she could find housing and a job. She further testified that she had completed programs and courses while incarcerated. However, she admitted that she did not receive any job training or parenting classes during her imprisonment.

The director of a child advocacy center, who had conducted a forensic interview with C. A. B., testified that C. A. B. had injuries to her face and body when she was interviewed, and C. A. B. had stated that Baker caused those injuries. The director also testified that C. A. B. expressed the desire to remain with her aunt. The

5

court appointed special advocate ("CASA") testified that all three children were thriving in the aunt's custody. Neither D. M. B. nor H. U. B. testified due to their ages.

The juvenile court found that the children were dependent due to their lack of parental care and control, and that Baker had subjected the children to aggravating circumstances through the abuse of De. B. and C. A. B. After detailing the abuse C. A. B. suffered, the juvenile court found that Baker's conduct qualified as aggravated circumstances in that she subjected C. A. B. and her siblings to chronic abuse. Although the juvenile court found that Baker had met some of the parenting plan goals by completing the various required assessments, the juvenile court further noted that she had failed to provide care and support, to create a significant bond with her children over the previous six months, or to obtain stable housing and income due to her incarceration. Thus, the juvenile court found that the cause of the children's dependency was likely to continue and cause serious physical, mental, emotional, or moral harm given the egregious abuse. The juvenile court then considered that placement with the aunt and uncle was in the children's best interest because they would remain with family and be able to see each other. Baker sought discretionary review, and this Court granted her application. This appeal followed.

6

In her sole enumeration of error, Baker argues that the juvenile court's decision is not supported by clear and convincing evidence where, as here, she made significant progress toward most of her case plan goals. She also contends that the language in the juvenile court's order leaves it unclear whether the court was relying on lack of proper parental care and control or on aggravating circumstances, the latter of which DFCS did not allege as a basis for termination. After a careful review of the record, we conclude that there is sufficient evidence to support the termination of Baker's parental rights.

OCGA § 15-11-310[3] sets forth the grounds for terminating parental rights and provides, in relevant part, that

> (a) In considering the termination of parental rights, the court shall first determine whether one of the following statutory grounds for termination of parental rights has been met:
>
> . . .
>
> (2) The parent has subjected his or her child to aggravated circumstances;

---

[3] We refer to the statute in effect in 2017, as that is the date applicable to the termination order in this case. We note that the statute was amended effective July 1, 2018 and the language in the current version has changed. Compare OCGA § 15-11-310 (a) (5) (2017) with OCGA § 15-11-310 (a) (5) (July 1, 2018).

(5) A child is a dependent child due to lack of proper parental care or control by his or her parent, reasonable efforts to remedy the circumstances have been unsuccessful or were not required, such cause of dependency is likely to continue or will not likely be remedied, and the continued dependency will cause or is likely to cause serious physical, mental, emotional, or moral harm to such child.

The term "aggravated circumstances" means, as is relevant here, the parent abandoned the child, subjected the child or the child's sibling to torture or abuse, or assaulted the child or the child's sibling, which resulted in serious bodily injury. OCGA § 15-11-2 (5) (A), (C), (F). "Abuse" is defined to include "[a]ny nonaccidental physical injury or physical injury which is inconsistent with the explanation given for it suffered by a child as the result of the acts or omissions of a person responsible for the care of a child[.]" OCGA § 15-11-2 (2) (A).

If *any* of the statutory grounds for termination are met, the court shall then consider whether termination is in the children's best interest. OCGA § 15-11-310 (b); see also OCGA § 15-11-26. "[T]he standard of proof to be adduced to terminate parental rights shall be by clear and convincing evidence." OCGA § 15-11-303.

As an initial matter, the fact that the juvenile court considered aggravating circumstances, even though the termination petition did not specify this as a grounds for termination, does not preclude our review of that basis for terminating Baker's parental rights. See *In the Interest of K. C. W.*, 297 Ga. App. 714, 717 (1) (678 SSE2d 343) (2009) (finding no error in juvenile court's consideration of father's mental capacity even though that was not identified as a ground for termination in the petition).

Turning to the merits, Baker focuses her argument on the trial court's finding that the children were dependent and that the dependency was likely to continue and cause harm. We need not decide whether dependency was an appropriate basis on which to terminate Baker's parental rights because the juvenile court also found that Baker subjected the children to aggravated circumstances – namely, the abuse of De. B. and C. A. B. – and the record amply supports termination on this statutory basis. See OCGA § 15-11-310 (a) (5).

As the juvenile court found, Baker has a history of abusing her children. She lost custody of her oldest child because she abused him, and once he was removed from the home, Baker began abusing C. A. B. The juvenile court's order details the physical abuse and injuries C. A. B. suffered. Moreover, C. A. B. was aware of the

9

abuse her older brother suffered before her mother began to abuse her. This is a sufficient basis for the juvenile court to terminate Baker's parental rights with regard to C. A. B. See OCGA § 15-11-310 (a) (2).

There is also sufficient evidence to support the termination of Baker's parental rights with respect to D. M. B. and H. U. B. When they were removed from Baker's care, D. M. B. and H. U. B. were only three years old and three months old, respectively. As noted, the definition of "aggravated circumstances" includes that the parent subjected the child *or the child's sibling* to abuse, or assaulted *the child's sibling*. See OCGA § 15-11-2 (5) (C), (F). Thus, the juvenile court was authorized to consider Baker's abuse of C. A. B. as evidence that she will not be able to care for her other children. Id.; see also *In the Interest of S. B.*, 312 Ga. App. 180, 183-184 (1) (718 SE2d 49) (2011) (sexual abuse of older siblings allowed court to infer adverse effect on younger siblings and find children deprived); *In the Interest of S. L. B.*, 265 Ga. App. 684, 688 (595 SE2d 370) (2004) ("the fact that appellant had three older children who were not in her care or supported by her indicates that she would likewise be unable to care for S. L. B."); *In the Interest of K. C. H.*, 257 Ga. App. 529, 531-532 (2) (571 SE2d 515) (2002) (finding younger child dependent after parent lost custody of older child due to sexual abuse by mother's live-in boyfriend).

Accordingly, there was clear and convincing evidence to support the termination of Baker's parental rights on the statutory ground of aggravated circumstances due to abuse.[4] We therefore affirm the juvenile court's order terminating Baker's parental rights to all three children.

*Judgment affirmed. Brown and Goss, JJ., concur.*

---

[4] In her reply brief, Baker challenges the finding that termination was in the children's best interest. However, she waived this issue by not raising it in her initial brief. See *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. 704, 707 (1), n. 8 (618 SE2d 621) (2005) (refusing to consider legal and factual arguments raised for the first time in reply brief). Nevertheless, there is clear and convincing evidence to support the juvenile court's finding that termination of Baker's parental rights is in the best interest of the children.